### KING v. CAMPBELL et al.

#### (Circuit Court, W. D. Virginia. January 25, 1898.)

1. INJUNCTION—CUTTING AND REMOVING TIMBER—ACTION AT LAW.
> Pending an action at law to determine the title to lands, equity will enjoin the cutting and removal of timber, when complainant shows a prima facie title.

2. SAME.
> Where defendant cuts timber on lands in dispute after issuance of a restraining order, but before service thereof, he will be enjoined from removing or disposing of any of the timber still remaining within the jurisdiction of the court.

This was a bill in equity by H. C. King against A. W. Campbell and others to enjoin the cutting of timber from certain lands pending an action of ejectment to determine the title thereto.

Maynard F. Stiles, for complainant.

Burns & Ayres, for defendants.

PAUL, District Judge. In this cause, on the 8th day of November, 1897, the plaintiff filed his bill, alleging that he is the owner in fee, and in actual possession, of a tract of land commonly known as the "Robert Morris 500,000-acre grant," located partly in Buchanan county, Va., and partly in the states of Kentucky and West Virginia. He

traces title to said tract of land from a grant to Robert Morris by the commonwealth of Virginia dated June 23, 1795, through successive transfers to himself, and files with his bill a plat and resurvey of said land, which he alleges was made in pursuance of an order of this court in another case, and of an order of the circuit court for the district of West Virginia in a case pending in that court. The bill further alleges that the title of complainant, as set out, has been sustained and established in successive actions of ejectment in this court and in the circuit court for the district of West Virginia. The bill further alleges that said tract of land is wild and mountainous and heavily timbered with a valuable growth of poplar, oak, walnut, and other valuable trees, which constitute the principal and almost sole value of said land, the same being practically worthless for agricultural, grazing, and other like purposes, and is wholly worthless for such purposes to your orator, and thus unsalable therefor; and the portion of said land which is situate in said district was purchased by your orator solely on account of the timber aforesaid, and for the purpose of cutting, manufacturing, and marketing the same, and employing your orator's capital therein and securing the profits derivable therefrom. That that portion of said tract of land which lies within the state of Virginia is bounded on the western side by the state of Kentucky, and on the northern and eastern sides by the state of West Virginia, towards which states all the creeks and streams flow, which form the natural and only roadways to and from said land, and the timber upon said land can only be practically removed therefrom to the markets therefor by hauling or floating the same out of the state of Virginia, and into the state of Kentucky or West Virginia; and the said creeks, especially Knox creek and its tributaries, and a wagon road leading therefrom down Bull creek, in West Virginia, to the Norfolk & Western Railroad, furnish ready means and facilities for the removal of timber from said lands. That said Campbell wrongfully and unlawfully, and against your orator's protest, has set a large force of men at work upon that portion of said land situate in said Buchanan county, cutting down your orator's timber, and has cut down a large quantity thereof, and is threatening and preparing to remove the same therefrom and out of the said state of Virginia, and to convert and dispose of the same to his own use, and is now engaged in cutting your orator's said timber, and threatening to continue so to do, and, unless restrained by this court, will, as your orator believes and avers, continue to cut, and will remove and dispose of and put beyond the jurisdiction of this court, great quantities of your orator's said timber. That the cutting and removal of the said timber is, in effect, the removal and destruction of the substance of your orator's said land, and is the destruction of the said land in the character and for the purposes for which your orator purchased and has held the same, and is an irreparable injury to your orator and his said land. That said Campbell claims and pretends to have purchased a portion of said land amounting to some 3,000 or 4,000 acres from one J. N. Watkins, who some time theretofore claimed to be the owner thereof, but your orator avers that said Watkins had not at any time any title or

valid claim thereto, interest therein, or possession or right of possession thereof, and no right, title, or interest passed to or was acquired by said Campbell by virtue of said pretended purchase and conveyance, or otherwise, and he has no right or title to said land, or to any part thereof, but said pretended purchase was and is void, and a fraud upon your orator's rights. That, long before said pretended purchase by said Campbell from said Watkins, your orator had, because of the claim of ownership of said Watkins, brought an action against said Watkins and others on the law side of this court to determine said claim of title, and the same now is, and at the time of said pretended purchase was, pending in this court at Abingdon, under the title of "Henry C. King v. Joshua Justus et al.," which fact was well known to said Campbell at the time of said pretended purchase and long prior thereto. The bill further alleges that long before said Campbell began the cutting of timber herein complained of, and before the completion of said pretended purchase by him, said Campbell met Maynard F. Stiles, one of your orator's solicitors, on one of the Norfolk & Western Railroad trains near Williamson, W. Va., and informed said solicitor of his (the said Campbell's) intention to make said purchase, which was then pending, and to cut and remove the timber upon said land, and said solicitor then and there earnestly counseled said Campbell not to make said purchase, for that the said land was not the land of said Watkins, or of any other, but only of your orator, and notified said Campbell of the said action against said Watkins, whereof said Campbell was then and theretofore cognizant, and protested against the proposed cutting of any timber upon said land, and notified the said Campbell that should he, the said Campbell, embark in the enterprise of cutting said timber, your orator would apply to this court for injunction to restrain the same. That at the time last aforesaid said Campbell suggested to said solicitor that he might purchase of your orator the land claimed as aforesaid by said Watkins, or in some manner compromise said claim; whereupon said solicitor expressed his willingness to submit to your orator any proposition said Campbell might make, and his doubt of the acceptance of any such proposition as said Campbell would make, and none was made. That afterwards said solicitor, being informed that said Campbell still contemplated and was planning the aforesaid trespass upon your orator's said land, sent to him by the United States mail a letter protesting against the cutting of said timber, a copy of which letter is hereto annexed, marked "Exhibit No. 12." Said letter was inclosed in a stamped envelope, having the writer's return address, and was never returned. The letter filed is as follows:

"Charleston, W. Va., Sept. 3d, 1897.

"Andrew W. Campbell, Esq., Hurley P. O., Va.—Dear Sir: Reports reach me to the effect that you are preparing to cut the timber on the lands that you recently purchased from J. N. Watkins and to put a large force of men in for that purpose. I understand, also, that you have stated that you had compromised with Mr. King, or had secured his permission to cut this timber. This, of course, you know is not true, and has no possible basis whatever, and I do not credit this last report. I wish to reiterate to you what I stated in my conversation with you upon the train some weeks ago, to the effect that Mr. King claims and owns this land as part of the Morris 500,000-acre grant, and that

Mr. Watkins had not, nor have you, any title whatever thereto, and that long prior to your pretended purchase an action of ejectment was brought against Mr. Watkins, and an injunction secured against him and the other parties to the suit, prohibiting them from cutting timber on this grant. Of this you confessedly had full knowledge when you went into this matter, and purchased the lawsuit with your pretended deed for the land, and title to the lawsuit is the only title that passed by the deed. You have thrust yourself voluntarily into this matter, knowing the land to belong to Mr. King, and to be in litigation, and are entitled to no indulgence or consideration whatever from the court. Of this you have been aware from the very beginning. These facts, however, I desire to emphasize to you, and impress upon you that if it is possible, through the court, to prevent your cutting or removing any timber from the land, or to make you answer in contempt for violating the existing injunction, if you do cut it, Mr. King will make every effort to that end. All of Pawpaw creek and all the waters of Knox creek westward, across the state line to Peter creek, is a part of the Morris grant, as you have long been advised, and all that portion thereof in Virginia is involved in the aforesaid suit. I trust that the report that you are preparing to cut this timber is not true, but, lest it may be, I hasten to give you further warning not to meddle with the same.

"Very truly,                   M. F. Stiles, Attorney for H. C. King.
"(Dictated.)"

The prayer of the bill is that the defendants be restrained from further cutting timber on the lands, and from removing or disposing of any timber already cut thereon, and from trafficking in timber cut or to be cut upon said land; that the plaintiff be decreed to have and receive the timber cut by the defendants, or the proceeds thereof, and be awarded damages against defendants for cutting said timber; and for the appointment of a receiver to take charge of the timber cut, and preserve the same, pending the hearing of this cause. On the filing of the bill a temporary injunction was granted on the 8th day of November, 1897, in accordance with the prayer of the bill, and a rule awarded requiring the defendants to show cause why a receiver should not be appointed to take charge of and dispose of the timber already cut by the defendants on the land claimed by the plaintiff, said rule being returnable on the 19th day of November, 1897. For some reason, not shown in the papers, this rule was not executed, and the matter was continued from time to time until the 31st day of December, 1897, when, on application and affidavit filed by the defendant A. W. Campbell, the restraining order was, on execution of a bond in the penalty of $2,000, suspended until the 7th day of January, 1898, at which time the cause should be further heard at an adjourned term of this court to be held at Abingdon. At the court held at Abingdon on January 7th the defendant A. W. Campbell filed his answer to the bill, and moved a dissolution of the preliminary injunction. On the coming in of this answer the complainant filed an amended bill, to which the defendant A. W. Campbell filed an answer, and objections. The defendant A. W. Campbell denies, in general terms, that the plaintiff is in possession of, is the owner of, or has the fee-simple title to the land mentioned in the bill upon which the defendant has been cutting timber, and avers that the title of the same is in himself and one John H. Dotson. Denies that the plaintiff's title has been sustained by repeated adjudications of this court and of the circuit court of the district of West Virginia, and that the plaintiff has title to the 500,000 acres of land claimed under the

85 F.—52

Morris survey. Denies that the land claimed by the plaintiff, even under the Morris survey, when the same shall have been properly located and surveyed, covers the land in the bill mentioned. Avers that the survey filed with the plaintiff's bill does not properly locate the outside boundaries of the Morris survey. Avers that the defendant and his vendors are vested with a fee-simple title to the lands claimed by the defendants, and that they have had open and notorious possession of the same for 20 years or longer before the plaintiff undertook to set up the said Morris grant and claim title to said land. As evidence of his title to this land, he files the following deed:

"This deed, made this 6th day of July, 1897, between J. N. Watkins and Lydia J. Watkins, his wife, of the county of Buchanan and state of Virginia, parties of the first part, and John H. Dotson and A. W. Campbell, of the second part, witnesseth, that for and in consideration of eleven thousand dollars, $5,500 of which is in hand paid, the receipt whereof being hereby acknowledged, the residue to be paid in one and two equal installments, in one and two years, of $2,750 each, not bearing interest from this date, the said parties of the first part do grant unto the said parties of the second part the following described land, to wit: One tract lying on waters of Pawpaw, of Knox Creek, of Tug river, in Buchanan county, Virginia, patented to Shadrick W. White and John N. Watkins on Sept. 1st, 1862, containing 1,117 acres, be the same more or less; said patent being of record in the land office in the city of Richmond, in Book 110, page 810. Reference is here made to the said patent for a more particular description of line, courses, corners, etc. Also a tract of land, containing 33 acres, more or less, lying in said Buchanan county, Virginia, on the Race Fork of Knox creek, patented in the name of William Estep, on the 31st day of October, 1848, and recorded in the office of the register of the land office in the city of Richmond, in Book 101, page 98. Reference to said patent is here made for a more particular description of the said survey. Also a tract containing 127 acres, lying in Buchanan county, on the Race Fork of Knox creek, and the waters of Pawpaw creek, of Knox, said land patented on the 1st day of July, 1856, to Uriah Estep. Said patent is of record in the office of the register of the land office in the city of Richmond in book ——. Reference is here made to the patent for a more particular description of the said land as to courses, distances, corners, etc., the same containing 127 acres, more or less. Also one undivided interest in a tract of five hundred, or five hundred and six, acres, be the same more or less, patented in the name of Shadrick W. White, John N. Watkins, and Pricey King, now Pricey Fuller, lying on the waters of Pawpaw creek, waters of Tug river, in Buchanan county, Virginia. Reference is here made to the said patent for a more particular description of the said land. Also all the lands I now own in all patents in the name of Uriah Estep, and conveyed by him to White & Watkins, the same at hazard as to quantity. These several tracts contain all the lands of J. N. Watkins on the Paw Forks and Race Fork, the waters of Tug river, and this deed is intended to include all the lands of the said parties of the first part on said creeks and waters of same, and on Home creek waters of Louisa river. It is further covenanted in this deed that the said J. N. Watkins and he hereby does retain a vendor's lien on the said lands for the deferred payments mentioned. The quantity of land hereby conveyed is supposed to contain 1,700 acres, but, be the same more or less as to quantity, all taxes, on and after the date of this deed, to be assumed and paid by the said parties of the second part, and that the said part— of the second part shall have quiet possession of the land and premises hereby conveyed, with covenants of special warranty.

"Witness the following signatures and seals:

"J. N. Watkins       [Seal.]
"Lydia J. Watkins   [Seal.]"

The answer further denies the pendency of an action of ejectment in the name of the plaintiff against J. N. Watkins, the defendants' vendor, for the recovery of the land in controversy. It denies the

conversation had between the plaintiff's solicitor, M. F. Stiles, and the defendant Campbell, as stated by the plaintiff, but admits that he had a conversation with said Stiles on the Norfolk & Western train, in which he says he told said Stiles that he intended to commence cutting timber on the following Monday; that he had purchased the lands with a view of severing the timber from the same. The answer admits that the defendant Campbell received the letter from Stiles, the attorney of the plaintiff, dated September 3, 1897, but denies that the same was received before said defendant was engaged in his work of cutting the timber in question. The answer further states that the defendant Campbell has already cut all of the merchantable timber on said land, which he desires to market and ship, and that he is not now cutting any more timber, but is simply delivering and manufacturing the timber already cut, with a view to shipping the same hereafter. He avers that he has expended and bound himself to expend in the neighborhood of $30,000 in the way of severing and preparing the timber for market.

The answer further says:

"Your respondent is advised that after the plaintiff has waited until he has been put to the great expense and outlay above mentioned and set out, and that after the extensive operation which he has started, and now has at work, upon these lands, all of which the plaintiff has been cognizant of, and that after all of the timber has been severed from these lands, that the plaintiff will not be permitted to seek the aid of a court of equity, and that a court of equity will not grant him relief, because the timber is personal property, and the plaintiff has his plain, clear, and adequate remedy at law. Even if it should have been upon the lands of the plaintiff, and therefore a trespass, the same having been completed, the timber having been severed from the freehold, respondent is advised that the plaintiff would be put to an action at law. Especially will the court refuse to grant any aid whatever, under the circumstances above detailed."

The answer further avers that in an action of ejectment heretofore tried on the law side of this court, in which H. C. King was plaintiff and the Sandy River Land Trust was defendant, the verdict of the jury fixed the lines of the plaintiff outside of the boundary lines as claimed by the plaintiff under the Morris survey.

The prominent question presented by the foregoing state of facts is the power of this court to enjoin the defendants from cutting the timber on the land in controversy pending the trial of the title at law, in the action of ejectment brought by the plaintiff against J. N. Watkins and others before said Watkins sold the land, in July, 1897, to the defendants Campbell and Dotson. This question has been so often passed upon by some of the circuit courts of this judicial circuit, and their decisions sustained by the circuit court of appeals, that the question is no longer an open one. It is clearly the duty of a court of equity to preserve the property in statu quo until the rightful owner of the property can be determined by the trial of the title at law. On this question the circuit court of appeals in Buskirk v. King, 18 C. C. A. 418, 72 Fed. 22, held: "If the mischief complained of is irremediable, and destroys the substance of the property, as is the case of cutting timber and extracting ores, an injunction will issue in order that the property may be preserved from destruction during such time as may be necessary to try the title at law." In the same

case the court says: "Where an injunction is sought merely to preserve the status quo, pending an action of ejectment, by restraining the defendant from cutting timber, the complainant is not required to make out such a case as will entitle him to a decree on final hearing, and it may happen that an injunction is properly granted although the ultimate relief sought is finally denied." This relief is granted where the plaintiff shows a prima facie title to the land in controversy. In this cause the plaintiff traces his title from a grant of the commonwealth of Virginia to Robert Morris, June 23, 1795, to himself, by an undisputed and unquestioned course of transfers. The defendants' claim of title to the lands in dispute is based on a number of junior grants recited in the deed from Watkins and wife to Campbell and Dotson. Of the various tracts embraced in that deed the boundary lines of none are given; only a reference is made to the several grants as of record in the registry of the land office of the state. It is to be noted that the deed is one with special warranty, in itself a suspicious circumstance as to the faith of the vendor and of the vendees in the title to land, for which the contract price was $11,000. On the evidence of title presented, respectively, by the plaintiff and the defendants, the court is of opinion that the plaintiff has shown a prima facie title to the land in controversy, and establishes such a case as requires a court of equity to protect from destruction the timber thereon pending the decision of the title to the land. The defendant Campbell in his answer insists that, to restrain him from cutting and removing the timber on this land until the title to the land has been determined, will result in serious loss to him from the fact that he has gone to much expense in purchasing machinery, locating sawmills, building tram roads, etc., for the purpose of getting out, manufacturing, and shipping the timber on the land in controversy. If he has made such investments, and is liable to suffer loss thereby, it cannot be said that the plaintiff is in any wise responsible therefor. The defendant, putting his own interpretation on the conversation had with Stiles, the plaintiff's attorney, before he commenced his timber operations on this land, had notice that the plaintiff, King, claimed title to the same. In addition to this, he acknowledges that he received the letter of Stiles, the attorney for the plaintiff, dated September 3, 1897, in which he is fully notified of the plaintiff's claim to the land. He makes no response to this letter, and pays no attention to the notice given in it that there was and still is an action of ejectment pending against his vendor, Watkins, for the recovery of this land. After these repeated and distinct notifications of the plaintiff's claim to the land, the most ordinary sense of caution and prudence would have induced the defendant to await a decision of the action of ejectment which would decide the title to the land. His refusal to refrain from cutting the timber on these lands after these notifications can only be referable to the energy which often sustains cupidity in its efforts to secure results to which it is not entitled under the law. The defendant's loss, if any he has suffered, is the result of his want of proper attention to the asserted rights of another claimant to the land, from which he proposed to take the timber.

But, as a further defense to an injunction, the defendant Campbell in his answer avers that he has already cut all of the valuable and merchantable timber on said land; that by severing the timber from the land it has become personal property; that he cannot be enjoined from removing and selling the same; and that the plaintiff must be put to his action at law to recover damages for any injury he may suffer by the removal of the timber. The temporary restraining order entered in this cause on the 8th day of November, 1897, inhibited the defendants from cutting any more timber on the land in controversy, and from removing or disposing of any timber already cut thereon. This order was in force from its entry, though notice thereof may not have been given to the defendants. The court cannot give its sanction to the contention of the defendant that, though he may be a trespasser upon another's lands, and though warned of the other's claim of title, he may sever therefrom all of the valuable and merchantable timber, yet, if he succeeds in doing this before an injunction order is served upon him, he must be permitted to carry away and dispose of the fruits of his wrongdoing. The temporary injunction heretofore awarded will be continued in force until the further order of the court, and the defendants be inhibited from removing or disposing of any of the timber cut upon said lands or removed therefrom which is still within the jurisdiction of this court. The defendant Campbell files certain objections to the filing of the amended bill by the plaintiff. These objections are not tenable, and will be overruled. The plaintiff's counsel file certain exceptions to the answer of the defendant Campbell. These exceptions are too general in their statements. The particularity required in exceptions to an answer is thus stated in Brooks v. Byam, 1 Story, 296, Fed. Cas. No. 1,947 (Jones, Rules Fed. Prac. p. 122, note): "Exceptions to an answer should state the charges in the bill and the interrogatory applicable thereto, if any, and then the terms of the answer in full, so that the court may at once perceive the ground of the exceptions and ascertain its sufficiency." The particularity required in exceptions to an answer has not been observed, and the same are overruled.