**BUCHHALTER v. RUDE.**

**RUDE v. BUCHHALTER et al.**

**Nos. 506, 507.**

Circuit Court of Appeals, Tenth Circuit. Dec. 21, 1931.

Rehearing Denied Jan. 23, 1932.

Henry E. Lutz, of Denver, Colo., for appellant Buchhalter.

Ernest Morris and Cass E. Herrington, both of Denver, Colo. (C. E. Wampler and Cass M. Herrington, both of Denver, Colo., on the brief), for appellant Rude.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

After a foreclosure sale held in June, 1929, the title to the properties of the Colorado Pulp and Paper Company stood in the names of Rude and Bronstine, joint purchasers at the sale. Rude and Buchhalter were associated in the venture, Rude having applied bonds of the par value of $61,000, exclusive of interest, on the bid at the sale, and Buchhalter having applied bonds and cash to the extent of $53,922. Roughly speaking, Bronstine owned a one-half interest, and Rude and Buchhalter each a one-fourth interest, in the mill. Bronstine was in charge of the operations; Rude and Buchhalter became dissatisfied with his management and wanted to sell their interests to him. Bronstine did not care to buy. In August, 1929, after an acrimonious dispute with Bronstine over the management, Rude and Buchhalter became apprehensive that Bronstine would commence proceedings in partition. They conceived the notion that it would embarrass Bronstine if a fictitious deed of trust was put of record. Their lawyers advised them that nothing could be gained by such a fictitious transaction, as of course was true unless the participants were prepared to follow it up with perjury, and probably not even then. But they persisted in their delusion, and on August 29, 1929, Rude conveyed a

one-fourth interest in the mill to Buchhalter for a recited consideration of $75,000. Buchhalter then executed his note to Rude for $67,500, and secured the note by his deed of trust on the one-fourth interest conveyed to him that day. It was conclusively proven that the note and deed of trust were intended to be but scraps of paper as between the parties, and that the sole object of their execution was an unconscionable effort to gain an unfair advantage over Bronstine, their associate in ownership.

Bronstine did not scare; so negotiations were opened to sell their interests to one Binstock. In September, Binstock offered a little cash and a lot of bonds; Rude wanted cash and not bonds for his share; in any event, he wanted whatever cash there was, offering to give Buchhalter time for the balance. Buchhalter would not agree to this unless Binstock would pay more cash, which Binstock would not do. The deal was left in the air, and Rude went to New York, leaving with his attorney deeds and a release of the trust deed to be used in case of a sale. Buchhalter resumed negotiations with Binstock and agreed on terms in October. Buchhalter testifies he advised Rude of the terms over the phone. It was necessary for Rude to deliver the Buchhalter note of August, and a telegram from his attorney advised him that the deal was closed and asked for the note. Rude sent in the note to the Denver National Bank with instructions to deliver upon receipt of $40,000. These instructions could not be complied with, so Rude modified them by instructing the bank to deliver the note to the First National Bank upon a statement from that bank that it would hold the proceeds of the sale to Binstock "until Buchhalter and myself have agreed in writing concerning disposition of said proceeds."

The Binstock deal was closed, and the First National Bank came into possession of the proceeds of the sale, $28,080.56 in cash and $92,500 in bonds. On the afternoon of November 18, 1929, Rude and Buchhalter went to the bank and drew down all of the cash but $100; Rude taking $16,365.34 and Buchhalter $11,615.22. The next day Rude paid $5,000 to the attorneys who had acted for them, so the cash was divided almost equally between them. Block, a disinterested and apparently a fair witness, testifies that on the night of November 18, he assisted Rude and Buchhalter to figure out their respective interests in the bonds in escrow.

So far there is little or no room for dispute as to the facts, and upon these facts Rude and Buchhalter were joint owners of the bonds in escrow, in the proportion that $61,000 bears to $53,922, subject to any accounting as to receipts and disbursements that may be necessary. Rude argues that there was no evidence of any agreement of such joint interest. Their joint interest follows from the facts, and no agreement to that effect is necessary. But here the way divides; Rude swears that while at the bank, on the afternoon of November 18, Buchhalter orally agreed to pay Rude $75,000, and that the bonds in the bank should be held as collateral to secure the oral promise. Buchhalter stoutly denies any such agreement.

Rude then brought this suit in equity, setting out by way of background, the note and trust deed of August, and an oral agreement alleged to have been made at that time by Buchhalter to pay Rude half of the profit which Buchhalter might realize on a sale, not to exceed $7,500; he sets out that such note and trust deed were canceled to effectuate the sale. He then alleges and sues on the oral agreement made at the bank in November, the prayer of the bill being for judgment against Buchhalter for breach of the November agreement and for a foreclosure of the lien on the bonds. Buchhalter categorically and under oath denied any such agreement, and set out specifically and repeatedly their joint interest in the bonds; he alleges that Rude comes into court with unclean hands; he prays that the bill be dismissed "and for such other and further relief as in equity and good conscience the facts warrant." The law firm of Blount, Silverstein & Rosner were made defendants, and answered that they had attached the bonds in a state court for unpaid attorney's fees. The escrow agent, the First National Bank, was made a defendant, and disclaimed any interest except as to a lien for $1,250 on Buchhalter's interest (which we are advised has now been paid), and for costs and attorney's fees. The bank did however pray for "instructions of this court as to the disposition of said cash and bonds."

The court heard evidence at length upon the issue so sharply presented, the existence of the oral agreement sued on, and the cause was submitted. In January, the trial court filed a memorandum opinion, finding the issues of fact against the plaintiff Rude, and directing a dismissal of the bill as to Buchhalter, which was the relief prayed for by Buchhalter. Whereupon defendant Buchhalter filed a request for findings of fact in which he requested that the court find, among other things, that "said Rude, along with said

Buchhalter, entered into what may be characterized as a campaign against the said Bronstine"; that a part of this campaign was the execution of the fictitious trust deed in August "in order to impart apparent reality to the transaction so far as Bronstine and associates might be concerned." Buchhalter then, for the first time, made the remarkable request that he be decreed to own all the bonds. The trial court denied these requests; made short and concise findings of his own and dismissed the bill. Both Rude and Buchhalter appeal.

■ Rude's appeal may be quickly disposed of. His entire case is predicated upon an oral agreement, the evidence concerning which is in sharp conflict. Rude's testimony cannot be buttressed by the fictitious note and trust deed of August, for nothing can be predicated upon such an evil-smelling transaction. That he insisted on a large amount of cash in the early stages of the Binstock deal is a circumstance only, the force of which is dissipated by the fact that he later yielded and surrendered his note without any cash requirements. Rude's story of the oral agreement is inherently improbable, and is in conflict with many circumstances, not the least of which is the fact that he consented that Buchhalter draw down $11,615.22 in cash immediately after the oral agreement that Rude was to get all cash was alleged to have been made, and that he and Buchhalter and Block spent the same night figuring out their respective interests in the bonds. The trial court did not believe Rude's story; we do not believe it; and that ends his appeal.

■ Buchhalter's appeal stands in somewhat different stead. Buchhalter's answer set out the joint interest of the parties in the escrow; the evidence supported his allegations. But he did not pray for any affirmative relief. The decree gave Buchhalter the relief·he asked for at the trial—a dismissal of plaintiff's bill. After the decision of the trial court he asked for additional relief, but relief to which he was not entitled. In this court, Buchhalter's position is that he is entitled to all of the bonds, a remarkable request considering that his sworn answer, his testimony, and the undoubted facts disclose that he does not own all the bonds and never did. As we understand his claim, it is based upon two propositions. First, that Rude and he engaged in an unconscionable campaign against Bronstine; that Rude's hands are therefore unclean, and that by virtue thereof title to the bonds has passed to Buchhalter. The doctrine of unclean hands is a weapon of

defense—it is not a muniment of title. And even if it were otherwise, a court of equity would hardly pass title from one unclean pair of hands to another pair which was particeps criminis. His second point is that by electing to claim a lien on all the bonds, Rude has abandoned claim of ownership to any. This discloses a confusion as to the doctrine of election of remedies. Where causes of action are predicated upon different states of fact, there is no election of remedies. The doctrine of election of remedies comes into play only when there are two or more inconsistent remedies available on the same facts. If the oral contract alleged by Rude had been made, he had a lien; if it was not made, he was a joint owner of the bonds. There is no rule of law that imposes a forfeiture of a half interest which a litigant actually has, because of his failure to establish his right to all, or that compels him correctly to forecast the outcome of an issue of fact under pain of forfeiting all interest in the subject matter. The Supreme Court of the United States decided the precise question here involved in Bierce v. Hutchins, 205 U. S. 340, 347, 27 S. Ct. 524, 525, 51 L. Ed. 828, where Mr. Justice Holmes said: "But the assertion of a lien by one who has title, so long as it is only an assertion, and nothing more, is merely a mistake. It does not purport to be a choice, and it cannot be one, because the party has no right to choose. The claim in the lien suit, as was said in a recent case, was not an election, but an hypothesis. Northern Assurance Co. v. Grand View Building Ass'n, 203 U. S. 106, 108, 27 S. Ct. 27, 51 L. Ed. 109. The fact that a party, through mistake, attempts to exercise a right to which he is not entitled, does not prevent his afterwards exercising one which he had and still has unless barred by the previous attempt."

In Barnsdall v. Waltemeyer (C. C. A. 8) 142 F. 415, 420, a plaintiff brought a suit to rescind a contract for fraud; he failed to prove the fraud; then he brought a suit on the contract, and was met by the plea that he had elected to treat the contract as rescinded for fraud and could not thereafter come into court on the theory that there was no fraud. Judge Walter H. Sanborn denied the plea and in forcible language answered the contention here made. He said: "It is contended that by the institution and prosecution of this suit in equity the plaintiff irrevocably elected to rescind the contract, and thereby estopped himself from maintaining this action to enforce it. But the fatuous choice of a fancied remedy that never existed, and its futile pursuit until the court adjudges

that it never had existence is no defense to an action to enforce an actual remedy inconsistent with that first invoked through mistake."

Judge Learned Hand disposed of a similar contention in apt language, when he said: "A party has an election only between existing, not supposed, rights. * * * That would be to put him, not to an election, but to a correct estimate of his right under pain of forfeiture." Doyle v. Hamilton Fish Corp. (C. C. A. 2) 234 F. 47, 51.

■ It is entirely clear that neither appellant is entitled to what he asks for by his appeal. The only decree that can ever be rendered is one predicated upon the truth, and that is, that they jointly own these bonds. There is much to be said for the trial court's decision to grant no relief in the premises, for there is a natural reluctance in granting relief to either. But the fact remains that the bonds are in the possession of the bank and that the parties cannot agree as to their disposition. Some court must instruct the escrow agent as to their disposition. There is no real reason why this court should pass on this unpleasant duty to another court, and thereby put the public to the expense of another trial. The facts are before us, and we have concluded that this court of equity, having taken hold of the matter, should wind it up.

■ The fact is that Rude and Buchhalter own these securities jointly, in the proportion that $61,000 bears to $53,922, subject to any claim thereto that may be established in the state court by Blount, Silverstein & Rosner, and subject to any unadjusted items of account between the two. If this were the ordinary case of a claim being honestly but mistakenly asserted, such a decree should be entered, Rude paying the costs of the case. But we are convinced that Rude's claim was not put forth in good faith, and that his testimony is materially false. Equity abhors a forfeiture, and unconscionable as Rude's conduct is, we are not at liberty to forfeit his property, particularly to one whose conduct is not irreproachable. But equity should right the wrong done, as far as may be. Rude has put Buchhalter and the bank to the expense of defending a claim conceived in bad faith. Any decree should therefore be so conditioned as to impress upon Rude's share of the securities a lien in favor of Buchhalter and the bank for the expenses to which they have been put by the assertion of this groundless claim, the amount thereof to be determined by the trial court.

The case will therefore be remanded with instructions to enter a final decree, taxing the court costs in the District Court against Rude; whatever may be left of the securities after the claim of Blount, Silverstein & Rosner has been adjudicated and satisfied in the state court, should be subject first to the proper charges of the escrow agent as such; second, the balance should be apportioned between Rude and Buchhalter in the proportion that $61,000 bears to $53,922, subject to any items of accounting that may be established between the two; third, from Rude's share, as so determined, should be deducted the court costs and the expense to which Buchhalter and the bank have been put in this litigation, including reasonable attorney's fees, to be determined by the trial court. The trial court is authorized to sell the securities, if necessary to carry out its decree, subject to the prior right of the state court. The cost of printing the record on these appeals is taxed to Rude; the other costs in this court are taxed to the appellant in each case.

Remanded with instructions.

### On Petition for Rehearing.

In a petition for rehearing it is earnestly insisted that this court is without power, according to the established usages of equity, to allow the expenses of litigation, including counsel fees, to the prevailing party; that the only counsel fees which may be allowed are those in the statute covering taxable costs.

■ The power of courts of equity over costs does not rest upon the statutes, but upon usage long continued. Newton v. Consolidated Gas Co., 265 U. S. 78, 44 S. Ct. 481, 68 L. Ed. 909; Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919. The rules of the High Court of Chancery of England have been followed by the courts of the United States. Pennsylvania v. Bridge Co., 13 How. 518, 563, 14 L. Ed. 249. Such rules allowed costs as between solicitor and client where the litigation is false, unjust, vexatious, wanton, or oppressive. In Guardian Trust Co. v. K. C. Southern Ry. Co. (C. C. A. 8) 28 F.(2d) 233, counsel fees were allowed the prevailing party. Judge Booth's opinion in that case traces the history of the allowance in equity of fees as between solicitor and client from the early English cases to the present; it is an exhaustive treatise on the subject, and a powerful authority in support of the power of equity to allow fees where equity and good conscience require it. That decree was reversed because it granted relief at variance with a prior mandate of the Supreme Court (281 U. S. 1, 50 S. Ct. 194, 74 L. Ed. 659), but the authority of Judge Booth's opinion

was not impaired. The fact that the Guardian Trust Company was a trustee is not important; the allowance was not from the trust estate, but was against a stranger to the trust.

 This opinion of the Eighth Circuit Court of Appeals, and the wealth of authorities therein cited, would be strong support for the decree directed by this court, if counsel fees had been included in the absolute decree against the appellant. That is not our decree, and counsel entirely misapprehend it. Only the costs between the parties—the taxable costs—were awarded against Rude, to be collected on execution if need be. Counsel fees were not included therein. What this court did was to impose a condition upon the decree asked for and awarded the appellant. The situation is this: The appellant alleged that a fund was in the possession of an escrow agent, which had agreed to hold the fund until appellant and appellee agreed in writing upon its disposition; that the parties could not agree; the appellant asserted a lien thereon, sought its foreclosure and prayed "for such other and further relief as to the Court may seem just." Appellant made the escrow agent a defendant; the escrow agent prayed for instructions as to a disposition of the fund. The appellee alleged joint ownership of the fund, and that the only reason for a failure to agree on its disposition was the assertion of the "wrongful and fraudulent demands and conduct of the plaintiff," and appellee prayed for "such other and further relief as in equity and good conscience the facts warrant." In this court appellant earnestly and vigorously insisted that if his lien was not sustained, the court should terminate the litigation by a decree of distribution. Appellee resisted this, and claimed that appellant had forfeited any interest in the fund by his conduct.

For all practical purposes, the fund was in court; appellant devoted five pages of his brief to the proposition that "equity having jurisdiction, having all of the parties and the evidence before it, should order disposition of these funds and bonds in accordance with the respective rights of the parties." Many controlling authorities were cited, among them Kinney-Coastal Oil Co. v. Kieffer, 277 U. S. 488, 507, 48 S. Ct. 580, 584, 72 L. Ed. 961, from which appellant quoted the following: "It is a general rule that a court of equity, in a suit of which it has and takes cognizance, may administer complete relief between the parties, even though this involves the determination of legal rights which otherwise would not be within the range of its authority. * * * And under that rule a court of equity in awarding relief to one party may impose conditions protecting and giving effect to correlative rights of the other."

In strict accord with appellant's contention and the authorities cited, a decree was directed, and conditions imposed that appeared to us to be equitable. Now it is asserted that we are without power to impose conditions on the decree. The authorities support appellant's original contention. In addition to the controlling authority above cited, see Foster's Fed. Prac. (6th Ed.) p. 908, wherein the author cites many cases to the effect that "In some cases it enforces this by the entry of a conditional decree without reference to the pleadings," and 10 R. C. L. 357, "The decree should be adapted to the circumstances and necessities of each case and should be so designed as to put an end to the litigation and not to foster it. And of course the court may attach to the grant of relief any conditions that to it seem proper." See, also, 21 C. J. 667, and many cases there cited.

That the conditions imposed concerned attorney's fees is a mere coincidence. The appellant, as a condition to a decree of distribution prayed for by him, should be required to bear the loss occasioned by his own inequitable conduct. It was the assertion of a false and groundless claim that prevented a distribution of the fund without the aid of equity. Such inequitable conduct put the other parties to expense in order to procure a distribution. That such expenses happen to be in part attorney's fees is not fatal. In Trustees v. Greenough, 105 U. S. 527, 535, 536, 26 L. Ed. 1157, the Supreme Court held: "The fee-bill is intended to regulate only those fees and costs which are strictly chargeable as between party and party, and not to regulate the fees of counsel and other expenses and charges as between solicitor and client, nor the power of a court of equity, in cases of administration of funds under its control, to make such allowance to the parties out of the fund as justice and equity may require."

 But, it is urged, the pleadings do not admit of such conditions. Both appellant and appellee plead the facts as claimed by them, and both asked for general relief. In Lockhart v. Leeds, 195 U. S. 427, 437, 25 S. Ct. 76, 79, 49 L. Ed. 263, it was held that "There is no reason for denying his right to relief, if the plaintiff is otherwise entitled to it, simply because it is asked under the prayer for general relief, and upon a somewhat different theory from that which is advanced under

one of the special prayers." See, also, United States v. Amalgamated Sugar Co. (C. C. A. 10) 48 F.(2d) 156. The facts were pleaded and proven. We do not understand that the court is without power to impose an equitable condition on a decree unless one or the other of the parties specifically prays for the imposition of a particular condition. The plaintiff very seldom prays that a condition be imposed that requires him to do equity; generally the defendant challenges the right of plaintiff to any relief, and hence does not ask for the imposition of conditions. The appellant's contention comes to this, that the court is powerless to impose any condition on a decree unless one of the parties requests it; and that the court has no constitutional power to impose a condition unless counsel is first advised of the condition which the court proposes to impose, and has an opportunity to be heard as to the propriety thereof. We do not agree. If a plaintiff comes into court and asks for an equitable decree, and all the facts are presented to the court, the chancellor has power to enter such decree as is just and equitable, and we know of no rule that requires the chancellor to submit to counsel the conditions which he proposes to impose, and for a hearing on each of such conditions, prior to the entry of the decree. If such were the law, the wholesome power of equity to condition a decree would be without substance.

■ It is urged that the trial court erred in excluding Rude's testimony concerning a telephone conversation with Buchhalter. Rude's denial of Buchhalter's testimony thereto was admitted, and an offer of proof was made of the excluded testimony, which we treated as testimony. Equity Rule 46 (28 USCA § 723). The testimony of Binstock which was excluded was corroborative of other testimony as to the preliminary negotiations, which we have found to be true.

Complaint is made because of the finding that Rude's suit was not in good faith. We have gone over the evidence again, and while it is possible that we have erred, we remain of the same opinion. It does not appear to be a case of mistake. The appellant's case was founded upon an alleged oral agreement which appeared to us to be improbable, which was flatly denied, and which did not accord with the circumstances. The language of the opinion is severe; but words should not be minced in characterizing the assertion of a false and groundless claim. It is suggested that the trial court did not find that Rude's claim was groundless. In equity the appellate court is not bound by the findings of the trial court. Furthermore, the trial court denied the plaintiff any relief, which decree could only be predicated upon a finding that the story told by Mr. Rude was not established.

It is intimated that the opinion of this court reflects upon counsel for Mr. Rude. We did not so intend. Mr. Rude doubtless disclosed to his counsel the same story to which he testified on the stand. If that story was true, he was entitled to the relief prayed for, and there can be no possible reflection upon his counsel for presenting to the court Mr. Rude's version of the transaction. The facts in the case did not develop until the defendant introduced his evidence.

Complaint is made because this court did not pass upon the interesting legal questions presented by a motion to dismiss the Buchhalter appeal. One of the grounds of the motion was that the appeal was frivolous. We found that appeal to be without merit, and taxed the costs against Buchhalter, except for printing the record which was necessary in considering Rude's appeal. We saw no occasion for passing upon other difficult questions presented by the motion.

The petition for rehearing and to modify the opinion is denied.