[Civ. No. 2289. Fourth Appellate District.—March 13, 1940.]

JEAN BOURDIEU, Appellant, v. SEABOARD OIL CORPORATION OF DELAWARE et al., Respondents.

Chandler & Wright for Appellant.

Frederick D. Anderson, Bertram L. Linz, Morrison, Hohfeld, Foerster, Shuman & Clark, Pillsbury, Madison & Sutro, Felix T. Smith, Boice Gross, Dockweiler & Dockweiler and George W. Nilsson for Respondents.

THOMSON, J., *pro tem.*—The trial court sustained the defendants' demurrers to each cause of action of the amended complaint without leave to amend; and subsequently denied plaintiff's motion for leave to amend the amended complaint; and thereupon entered judgment "that plaintiff take nothing in the above cause". Plaintiff appealed from this judgment.

A brief *résumé* of the executive orders and the legislation involved is essential to an understanding of the pleadings herein and the controversy arising therefrom. President Taft, on September 27, 1909, July 2, 1910, December 30, 1910, and on other occasions, by proclamation, withdrew vast areas of public domain from all forms of settlement, entry or disposal under the mineral or nonmineral laws of the United States because much of the public domain containing deposits of coal, oil, gas and other minerals was being taken up under

various mineral or homestead laws of the United States for a nominal price, thus depriving the government of large revenues which it would otherwise ultimately receive from such lands. In order to permit the use of the surface of these lands for agricultural and kindred purposes Congress enacted a number of surface entry laws, including the act of July 17, 1914 (38 Stats. 509, U. S. C. A., title 30, secs. 121 et seq.), which provided for an agricultural entry, and the Stock-Raising Homestead Act of December 29, 1916 (39 Stats. 862, U. S. C. A., title 43, secs. 291 et seq.), which provided for a stock-raising entry. These acts provided that all entries made and patents issued thereunder would be subject to a reservation to the United States of all minerals in the lands, together with the right to prospect for, mine and remove the same and to dispose of the minerals in such lands in accordance with the mineral land laws in force at the time of such disposal. Then followed the Mineral Leasing Act of February 25, 1920 (41 Stats. 437, U. S. C. A., title 30, secs. 181 et seq.), under which qualified persons were permitted to enter upon such lands to prospect for oil and gas and other minerals, and, after discovery, to reenter such lands under lease from the United States to extract and remove such minerals. Provision is made for the payment of damages to the agricultural homesteader or the stock-raising entryman.

In substance, the amended complaint alleges that plaintiff is the owner of the surface rights to two adjoining parcels of land, each comprising about 320 acres. The first cause of action relates to the north half, and the second cause of action relates to the south half, of section 30, township 21 south, range 17 east, M. D. B. & M., Fresno County, in the North Dome of Kettleman Hills Oil Field. The amended complaint alleges that plaintiff acquired the north half of said section by virtue of his application, entry and securing a patent thereon, under the United States Homestead Act of February 19, 1909 (35 Stats. 639, U. S. C. A., title 43, sec. 218), and under the provisions, rights and reservations of the United States Agricultural Entry Act of July 17, 1914, *supra;* and to the south half of said section by virtue of his entry under the United States Stock-Raising Homestead Act of December 29, 1916, *supra.* It further alleges that the defendants acquired their rights to the minerals underlying said lands by

virtue of leases from the United States under the Mineral Leasing Act of February 25, 1920, *supra;* that subsequently against the will of plaintiff and without executing the bond required by said acts, defendants made repeated entries upon plaintiff's homestead, destroyed fences, corrals and sheep runs, and over a period of years drilled and placed on production a number of oil and gas wells on each of said par· cels of land, together with the facilities accompanying such wells, including certain structures therein described. The amended complaint sets out in detail the dates of such entries, the dates when the wells were placed on production, and the dates on which the structures and facilities were completed. The first entry and some of the subsequent entries on each of said parcels of land occurred more than three years prior to the filing of this suit. The amended complaint also alleges that, in addition to using said facilities to handle oil and gas produced on said section 30, defendants were and are also using said facilities and structures, against the will of plaintiff, in connection with the handling of oil and gas from other lands distant from said section 30. In his motion to amend the amended complaint, plaintiff sought to amplify this alleged additional use of plaintiff's land by defendants in connection with the handling of oil and gas produced by defendants and others on lands not belonging to plaintiff and located beyond the boundaries of said section 30.

It is one of the contentions of respondents that both causes of action set out in the amended complaint are barred by the statute of limitations, coming within the provisions of either subdivision 1 or subdivision 2 of section 338 of the Code of Civil Procedure, as being an action upon a liability created by statute, or an action for trespass upon or injury to real property. In support of their position respondents urge that the amended complaint discloses that the first entry was made by respondents on the north half of said section 30 on May 11, 1933, and on the south half on September 20, 1931, each being more than three years before the filing of the original complaint, which was on March 30, 1938, and that there is but one cause of action for damages caused by respondents' use of the land and that arises at the time of the first entry under the lease. The portion of the Agricultural Entry Act of July 17, 1914, *supra,* which is material to this discussion is as fol-

lows: "Any person who has acquired from the United States the title to or the right to mine or remove the reserved deposits, . . . may reenter and occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining and removal of the minerals therefrom, and mine and remove such minerals, upon payment of damages caused thereby to the owner of the land, or upon giving a good and sufficient bond or undertaking therefor in an action instituted in any competent court to ascertain and fix said damages." The following provision for damages is contained in the Stock-Raising Act of December 29, 1916, *supra*: "Any person who has acquired from the United States the coal or other mineral deposits in any such land, or the right to mine and remove the same, may reenter and occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining or removal of the coal or other minerals, first, upon securing the written consent or waiver of the homestead entryman or patentee; second, upon payment of the damages to crops or other tangible improvements to the owner thereof, where agreement may be had as to the amount thereof; or third, in lieu of either of the foregoing provisions, upon the execution of a good and sufficient bond or undertaking to the United States for the use and benefit of the entryman or owner of the land, to secure the payment of such damages to the crops or tangible improvements of the entryman or owner, as may be determined and fixed in an action brought upon the bond or undertaking in a court of competent jurisdiction against the principal and sureties thereon, . . . "

It is our conclusion that, in entering and occupying the land under the leases, respondents were not trespassers. Under the statutes providing for such leases, the lessees have not only a right to extract the oil and gas, but also the appurtenant right to enter and to use and occupy so much of the surface of the land as may be required for all purposes reasonably incident to the mining and removal of the oil and gas therefrom; the respondents, as such lessees, being liable, however, for all damage caused thereby to appellant. As pointed out in *Kinney-Coastal Oil Co.* v. *Kieffer*, 277 U. S. 488, 504 [48 Sup. Ct. 580, 72 L. Ed. 961], the Surface Entry Act and the Leasing Act are to be read together, each as the

complement of the other. "So read they disclose an intention to divide oil and gas lands into two estates for the purposes of disposal—one including the underlying oil and gas deposits and the other the surface—and to make the latter servient to the former, which naturally would be suggested by their physical relation and relative values." By the statutes a servitude is placed upon the surface estate for the benefit of the mineral estate, but the obligation is placed upon the holder of the dominant estate, upon entering and occupying any portion of the surface, to pay the owner of the servient estate the damages caused thereby. This liability, we believe, is clearly a liability created by statute. (*County of Calaveras* v. *Poe*, 167 Cal. 519, 522 [140 Pac. 23]; *Raymond* v. *Christian*, 24 Cal. App. (2d) 92, 113 [74 Pac. (2d) 536].)

We do not believe, however, that only one cause of action arose by reason of the lessees' entering upon and occupying various portions of the land. (*Raymond* v. *Christian, supra.*) The amended complaint discloses that some of the wells were begun and carried to completion at different times within three years immediately prior to the filing of this action. The statutes permitting lessees to enter upon the land provide that a lessee "may reenter and occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining and removal of the minerals therefrom". More than 640 acres of land are involved in this action. To drill the first well under such reentry and place it on production probably required the occupation of only a few acres, and the remainder could be used by appellant for his farming and sheep raising. Appellant was not in a position to know at that time how much of the surface would be necessary for the operations of respondents in carrying out the terms of their leases. Even on so-called "known structures" the drilling of oil or gas wells is a hazardous and speculative industry. When the first entry is made on a section of land under such a government lease there can be no certainty as to how much of that section will produce oil or gas in commercial quantities. We think it would be a strained and unwarranted construction of the statutes to require a homesteader, under such circumstances, to anticipate how much of his homestead the lessees contemplate occupying. The lessees could not be required to pay him damages for the

portion of the surface not affected by their operations and on which the homesteader could continue his agricultural or stock-raising activities unmolested by their operations. An injustice would be wrought upon a homesteader to place such a burden upon him and require him, at his peril, when the first entry is made by the lessees, to anticipate how much damage will be caused by the lessees' future occupancy of additional land. We feel that Congress did not intend the statutes to place such a burden upon the homesteader, and that the intent of these statutes is that a new cause of action for damages arises upon each entry and occupancy of additional parcels of the homesteader's land. It may be that the lessee, under the statutes above referred to, has the right, upon re-entry under the lease, to bring suit to have the entire amount of damages assessed, prospective as well as accrued. This is indicated by the opinion in the case of *Kinney-Coastal Oil Co.* v. *Kieffer*, handed down by the United States Circuit Court of Appeals and reported in 9 Fed. (2d) 260, 263. This case was reversed by the Supreme Court on other grounds. (*Kinney-Coastal Oil Co.* v. *Kieffer*, *supra*, at p. 507.) If the lessee, at the time of entry, or upon completion of the first oil or gas well, knows how much of the surface he will have to occupy to carry out his mining operations on the property, the entire question of damages might be disposed of in one action. However, if such an action is not brought by the lessee, we do not believe that fact would toll the statute of limitations as to the first or subsequent entries by the lessee under the lease, as the homesteader has his right of action for such damage which, if not seasonably commenced, will be barred. The issue of how much of the surface is required for all purposes reasonably incident to the mining and removal of oil and gas or other minerals from the homesteader's land ordinarily would be a question of fact to be determined on trial.

Respondents urge that the case of *Kinney-Coastal Oil Co.* v. *Kieffer*, *supra*, is binding upon this court, and they state that it holds that, although only one well had been drilled on an eighty-acre tract, the use of all the surface was necessary in that producing oil field for the reasonably economical and efficient operations for oil and gas. Respondents then argue that appellant should have known, and this court should take

judicial notice of the fact, that all of the surface of appellant's land is reasonably necessary for respondents' oil and gas operations and development and, therefore, but one cause of action arose and such cause of action arose at the time of the first entry by the respondents. But, in *Kinney-Coastal Oil Co.* v. *Kieffer, supra,* no attempt was made by the Supreme Court to fix a gauge or measure by which to determine, at the time of the first entry or the completion of the first well on the premises, how much of the surface will be reasonably necessary to carry out the lessees' obligations under the lease. In that case, that issue was determined as a question of fact at the trial. We recognize the principle that the state courts are bound by the construction of the federal laws by the federal courts. (*New York Central R. R. Co.* v. *Frank H. Buck Co.,* 2 Cal. (2d) 384, 389 [41 Pac. (2d) 547] ; *Hoogbruin* v. *Atchison etc. Ry. Co.,* 213 Cal. 582, 586 [2 Pac. (2d) 992] ; *Hines* v. *Industrial Acc. Com.,* 184 Cal. 1, 16 [192 Pac. 859, 14 A. L. R. 720].) But the case of *Kinney-Coastal Oil Co.* v. *Kieffer, supra,* was directed against the sale and use of the surface of the land for townsite purposes. Kieffer, the homesteader and limited patentee under the Agricultural Act of July 17, 1914, knowing one oil well was completed on the land and the others were contemplated, had sold portions of the land as town lots and purchasers from him had built residences and store buildings on the homestead property; and Kieffer was proceeding to sell the remainder of the homestead for town buildings. The lessees brought an injunction suit to prevent the sale and use for townsite purposes of the agricultural homestead, on which the operations under the oil and gas lease were proceeding. The court held that the sale and occupancy of the surface for townsite purposes would seriously interfere with the lessees' mining operations; and that the lessees were entitled to an injunction to prevent the threatened use and occupancy of the surface for purposes incompatible with lessees' right to continue with their mining operations under the lease. There the threatened use by the agricultural homesteader was a use not contemplated by the Agricultural Homestead Act of July 17, 1914, under which the land was patented, and the evidence at the trial proved that the lessees would ultimately need the entire surface for their operations under the lease; and, obviously, it would im-

pede the lessees' operations if a town should be built upon the land upon which they would be required to drill for oil and gas. That oil field, the court said, was a widely known producing oil field before any step was taken to secure either the lease or the patent. In the instant case, the amended complaint alleges that plaintiff's use of the land was confined solely to farming and sheep raising; and that plaintiff applied for his patent in 1919, which was several years before the discovery of oil in commercial quantities in the Kettleman North Dome Oil Field, in which the land is situated, and fourteen years prior to the completion of the first well on plaintiff's homestead, as shown by the amended complaint.

Respondents urge that, where the injury to the land is permanent, prospective as well as accrued damages can be recovered and, for that reason, the damage is original and gives rise to only one cause of action, and, in the instant case, this action was barred by section 338 of the Code of Civil Procedure. But that assumes that the original entry under the lease affected the entire half section of land so entered. It is our conclusion, as stated above, that such entry and each subsequent entry under the lease affected only so much of the surface as was required by respondents' operations on the respective portions of the land actually so occupied. Any cause of action arising out of such entries and occupancy which accrued prior to three years immediately preceding the filing of this action would, of course, be barred.

As stated above, we feel that the entries of defendants under their leases did not constitute trespasses and, for that reason, subdivision 2 of section 338 of the Code of Civil Procedure does not apply. But, even if such an entry were regarded as a permanent trespass or injury to real property, the statute would begin to run when the trespass was committed. (Civ. Code, sec. 3283; *Williams* v. *Southern Pac. R. R. Co.*, 150 Cal. 624, 626 [89 Pac. 599].) Moreover, the injury or trespass would relate only to the portion of the land so entered upon and occupied at the time, and not to the unoccupied portion of said section 30. Such entries made more than three years immediately prior to the filing of this action would, therefore, be barred, but the entries made within such period would not be barred. (Code Civ. Proc., sec. 338, subd. 2.) In any event, whether subdivision 1 or

subdivision 2 of said code section applies, we believe the causes of action based upon the entries and occupancy by defendants made within three years immediately prior to the filing of this action are not barred by the statute of limitations, and that each of the causes of action set forth in the amended complaint states a cause of action against the defendants, and each of them; and that the demurrer to each of said causes of action should have been overruled.

The amended complaint alleges that the facilities constructed by the defendants on plaintiff's land are used by defendants in handling oil and gas produced by themselves and others on lands outside of said section 30. The trial court took the position that neither cause of action alleged clearly that the increased use of these facilities and structures was injurious to plaintiff. In paragraph IX of the first cause of action and in paragraph X of the second cause of action it is alleged " . . . that the defendants, and each of them, have from time to time caused various gulches and ravines on the premises to be filled with oil and waste products from the aforesaid wells, and plaintiff is informed and believes, from other wells belonging to said defendants and located outside of said section 30". The filling of gulches and ravines on appellant's premises with oil and waste products from oil wells outside of appellant's land would naturally be injurious to his sheep-grazing land and, we think, is an additional injury to his land not contemplated nor permitted by any of the statutes involved in the case, which statutes, as well as respondents' leases covering the appellant's land, gave respondent lessees only the right to "occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining and removal of the minerals therefrom", that is, from the land so entered and occupied by the lessee. (Agricultural Entry Act of July 17, 1914, *supra;* Stock-Raising Entry Act of December 29, 1916, *supra.*) While Congress intended, by these laws, to encourage the extraction of oil and gas from such lands and to permit the United States to receive royalties therefrom, it also intended to protect the homesteader in his limited right to use the surface of the homestead. To permit said acts of the respondents alleged in paragraph IX of the first cause of action and paragraph X of the second cause of action, with-

out granting appellant any recourse, would destroy the protection to the homesteader intended by the statutes. It is our opinion that the continuing or recurring injury to appellant from such use of appellant's land is without right and is in the nature of a continuing trespass giving rise to separate and successive causes of action for the consequential damages as the same are, from time to time, sustained; and that appellant is not barred from a recovery for such damages as have accrued within the statutory period. (4 Sutherland on Damages, 4th ed., pp. 3849 to 3854; *Kafka* v. *Bozio,* 191 Cal. 746, 750 [218 Pac. 753, 29 A. L. R. 833]; *MacLeod* v. *Fox West Coast Theatres Corp.,* 10 Cal. (2d) 383, 387 [74 Pac. (2d) 276].) ■ However, to further overcome the objection raised by respondents that the amended complaint did not clearly allege the injury to plaintiff caused by such increased use of plaintiff's land, plaintiff moved the court for leave to amend the amended complaint, setting forth in his written motion the particular amendments which he proposed to make. These amendments, if allowed, would have corrected any such defect in the amended complaint and we are of the opinion that plaintiff's motion to amend the amended complaint should have been granted. ■ Respondents endeavored to justify this added use of appellant's land by requesting the court to take judicial notice of the unit plan agreement between the respondents and others, under which respondent Kettleman North Dome Association operates for the members of such association, the lands located in the North Dome of Kettleman Hills Oil Field. If we assume such an agreement, it would not give the respondents the right to use appellant's land in any manner or for any purpose not provided in the homestead and leasing acts above referred to and respondents would still be liable for all damage, if any, caused by such additional use of appellant's land.

The second cause of action alleges that defendants entered upon the lands of plaintiff against his will, without payment of damages and without giving a bond therefor as required by the Act of December 29, 1916. Respondents assert, and but briefly discuss, in their briefs the point that this court must take judicial notice of the fact that a bond was given by one of the respondents as required by the secretary of the interior in connection with the granting of a lease on said

south half of appellant's land to which the second cause of action relates. ▮ It is well established that the courts of California take judicial notice of the executive acts of the government of the United States. (Code Civ. Proc., sec. 1875, subd. 3; *Livermore* v. *Beal*, 18 Cal. App. (2d) 535, 539 [64 Pac. (2d) 987].) In the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary. (*Chavez* v. *Times-Mirror Co.*, 185 Cal. 20, 23 [195 Pac. 666]; *Livermore* v. *Beal, supra.*) However, we deem it unnecessary to comment upon the nature or sufficiency of this bond, or the effect of its execution and delivery upon the second cause of action, for, regardless of its effect, we believe the judgment must be reversed for the reasons heretofore stated, namely,—that appellant can recover on his first cause of action for all damages caused by the entries upon the north half of appellant's land made by respondents within the statutory period; and also that the use and occupancy of both parcels of appellant's land by respondents to handle oil and gas produced on other tracts of land is in the nature of a continuing trespass, and appellant may recover for such resulting damages as he has sustained within the three years next preceding the filing of this action. For like reasons we express no opinion on the question of the measure of damages which was argued in the briefs. ▮ As to the second cause of action, if the bond mentioned in this paragraph of the opinion was in fact given, and if such bond affects the right of recovery of damages for lawful entry on the south half of said section 30, those matters should be pleaded and considered on the trial of the action. We may assume that those matters, as well as the proper statute of limitations to be applied if such a bond was given, and the correct measure of damages, will receive due consideration in the trial court.

The judgment is reversed and the cause remanded to the trial court with instructions to take further proceedings in accordance with this opinion.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 12, 1940, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 6, 1940.