LESLIE A. MILLER, MARGARET M. MILLER, KATHERINE M. MABEE, JOHN S. MILLER, ARTHUR H. READ, LEE W. READ, HERBERT W. READ, WINIFRED M. READ, MRS. T. J. CARROLL, BERNARD HOWELL, RAY E. LEE, D. AVERY HAGGARD, ADELAIDE B. LEE, JOHN D. MABEE, MARTHA B. HAGGARD,

*Plaintiffs and Respondents,*

vs.

HARRY L. SCOGGIN,

*Defendant and Appellant.*

(No. 2378; February 10th, 1948; 189 Pac. 2d. 693)

For the defendant and appellant there was a brief and oral arguments by E. C. Raymond of Newcastle, Wyoming and James T. McGuckin of Sundance, Wyoming.

For plaintiffs and respondents there was a brief and oral argument by Albert D. Walton of Cheyenne, Wyoming.

## OPINION

RINER, Chief Justice.

This is a companion case with No. 2379, Scoggin et al vs. Miller et al this day decided. The circumstances which brought about the litigation in that action have been set forth quite fully in the opinion in that case

filed. A number of the points urged in this case have been already disposed of by what has been said in that opinion and it will accordingly be unnecessary to re-examine them further. Some repetition of the facts and circumstances related in No. 2379 and references to that opinion will perhaps be unavoidable here but that will be done as shortly as possible.

The plaintiffs and respondents herein who for convenience and brevity may be subsequently referred to as the M-R locators as in Case No. 2379 supra, brought this action to obtain a temporary injunction restraining the defendant Harry L. Scoggin from interfering with plaintiffs or their employees in going upon the placer mining claims theretofore located by plaintiffs as described in the opinion aforesaid and placing improvements upon said claims and also from threatening the plaintiffs or their employees with bodily harm or injuries and that upon final determination of the action the injunction be made perpetual.

The pleadings of the parties may be briefly outlined as follows: Plaintiffs' petition filed June 27, 1945 alleged that the plaintiffs were on July 1, 1941 and since that date the owners and in possession of the Milread placer mining claims Nos. 1 to 4 inclusive and also the Milread placer mining claims Nos. 6 and 8 respectively, Nos. 9 to 16 inclusive and Nos. 18 to 20 inclusive, some seventeen placer mining claims in all, the land descriptions of each claim being set forth and the details of the steps taken by them as required by law to establish such claims as valid under federal and state mining statutes were also alleged. It was then averred that on January 19, 1945 the plaintiffs had filed their application for a United States patent to these claims in the United States Land Office at Buffalo, Wyoming; that the notice of application for patent for these lands was being duly published in the Sundance Times, a news-

paper of general circulation in Crook County, Wyoming, its first publication being on June 21, 1945 and its last one August 16, 1945; that in order to obtain such a patent under the federal mining law to these several claims, it was necessary that plaintiffs do or cause to be done improvements worth at least $500 on each placer mining claim; that until June 20, 1945 the employees of the plaintiffs were engaged in building roads both to and on said claims, having theretofore placed some equipment on said claims for use there; that the defendant, Scoggin, on June 15, June 20, and June 22, 1945 went to plaintiffs' employees and ordered them to remove their equipment from plaintiffs' claims and refused to allow Miller, one of the M-R locators, and his employees to continue their work or go on with work on said claims; that this refusal was accompanied by the threat on Scoggin's part of using a .32 special caliber rifle if his orders to desist from work on the claims and not to move any machinery or power equipment thereon, were disobeyed; that plaintiff's employees, though ordered by Miller to go ahead with their work, in view of Scoggin's threat declined to do so; that plaintiffs had employed two men to operate the equipment and machinery which had been brought from Cheyenne and leased at stated sums per hour and per day for the purpose of doing this work; that by the action of Scoggin in thus stopping plaintiffs' work the plaintiffs were damaged in the sum of $1,600 at the time of filing their petition and:

"will continue to suffer damages in the sum of $200.00 per day as long as they are unable to work with said machinery and labor upon said placer mining claims due to the interference, threats and actions of the said Harry L. Scoggin as aforesaid."

This petition was supported by the positively verified affidavit of Leslie Miller, one of the plaintiffs. Upon presentation of the petition, affidavit, and motion for

restraining order and injunction to the district court of Crook County, Wyoming, an order was made by that court directing the clerk of said court to:

"issue a restraining order and injunction restraining and enjoining the defendant, Harry L. Scoggin, during the pendency of this action from interfering in any way or threatening to interfere or attempting to interfere in any way with the plaintiffs, their agents and employees from going upon the lands and premises included in the several placer claims described in plaintiffs' petition and said lands being described as follows:"

Then follows a description of the lands included in the M-R placer mining claims and the order thereupon continued as follows:

"and building roads and performing other work and labor and placing improvements upon said lands, and from in any way, either by words or actions, threatening the plaintiffs, or their agents and employees with bodily harm or injuries.

"That said restraining order and injunction shall become operative upon the plaintiffs filing in the office of the Clerk of this court an undertaking executed by sufficient surety to be approved by the Clerk of this Court in the sum of $1,000.00 to secure the defendant, Harry L. Scoggin, above named, the damages he may sustain if it be finally decided that the injunction ought not to have been granted.

"Dated this 27th day of June, A. D. 1945."

The defendant answered this petition on July 19, 1945 by denials of the allegations of that pleading and also averred that the lands aforesaid on November 3, 4, 5 and 6, 1944 had been located by Scoggin and associates as valid placer mining claims, said lands at that time being, it was asserted "open to location" because of failure on the part of the plaintiffs to obey federal and state law in stated particulars relative to the location of the Milread placer mining claims; that the de-

fendant and his associates have held open, notorious possession of said lands and were entitled to possession of them when the M-R locators undertook to do work, put improvements on, and move machinery and tools thereon; that:

"the sole purpose of instituting this action and procuring the injunction was to prevent this defendant from going upon and about the said premises and to take from this defendant and his fellow locators possession of the said claims and deliver possession thereof to plaintiffs herein."

A second defense was set out in the answer claiming that defendant was:

"owner in fee simple, by patent from the Government of the United States of a part of the land described in such petition and was the lessee by a lease under the so-called Taylor Grazing Act of the remaining land so described herein. That he had been such owner and lessee for a long period of time prior to the said date and ever since has been and is now such owner and lessee;"

also that plaintiffs came upon said lands:

"with said equipment and for said purpose wholly without the consent of this defendant: Without requesting permission from this defendant so to do and in utter disregard of the rights of this defendant in the said land and without his knowledge or consent and without offering to pay for the damage to said surface or to secure payment thereof in any manner."

The answer prayed that upon final determination of the cause, Scoggin and his associates be awarded possession and right of possession and title to the mining claims located by them and that the injunction order be dissolved.

By a reply consisting for the most part of denials of the claims of defendant and associates to the ground in question, the cause was put at issue.

This action was tried to the court after the trial of the companion case aforesaid had been completed though not decided, but after that cause had been taken under advisement by the court to permit counsel to file briefs in support of their contentions in the case. In the case now under consideration it was also stipulated by the parties with the consent of the court that:

"all of the evidence taken and submitted in the case of Harry L. Scoggin and others versus Leslie A. Miller and others, that may be material in this case, shall be received and considered by the Court as evidence taken and submitted in this case."

The case of Harry Scoggin et al vs. Leslie Miller et al referred to in the foregoing stipulation is the one which supplied the record upon which Case No. 2379 was brought here by direct appeal.

The court thereafter took the instant case under advisement also, to enable counsel to submit briefs. Subsequently the court made its findings of fact and conclusions of law. And thereafter it rendered judgment making perpetual the temporary restraining order hereinbefore recited and also adjudged that plaintiffs: "do have and recover of and from Harry L. Scoggin, the Defendant above named, damages in the sum of $1696.50, together with the costs of this action, taxed at the sum of $28.50, with interest on said sum of $1696.50, together with said costs from and after the entry of this judgment."

This allowance of damages was made in accord with the court's previous finding that the stated amount included in the judgment was for damages "suffered by plaintiffs by the unlawful action of the defendant" in "not being permitted by said defendant to move said power machinery upon said claims". At the same time an order was made overruling an oral motion made by the defendant at the commencement of the trial to vacate the temporary restraining order and injunction

aforesaid. The final judgment thus rendered in this suit is the one now questioned in this proceeding.

In Case No. 2379, supra, previous to our consideration of the contentions argued by the parties therein, we referred to two principles of appellate procedure which controlled our view of the evidence in that case and those principles must be again applied in this case for the reasons stated in that one. The facts necessary to be recited in order to understand the legal questions submitted will be set forth in connection with our discussion of those questions. The situation of the parties prior to June, 1945 has, we think, been sufficiently detailed in the opinion in Case No. 2379 aforesaid, and we need not again review it here.

It is contended in criticism of the judgment aforesaid that the plaintiffs should not have been awarded the temporary injunction described above and that that writ should not have been made permanent because its issuance at the commencement of this suit operated to take the possession of the property involved from the parties asserting rights thereto under the placer mining claim locations made by Scoggin et al, and to give it to the M-R locators who were asserting rights under the placer mining claim locations made by them. Our attention is directed to our former decisions in Wyoming Theatre Co. et al vs. Rex Inv. Co., 37 Wyo. 357, 261 Pac. 908 and Alaska Development Co. vs. Brannan, 40 Wyo. 106, 275 Pac. 115 where we held in substance that the remedy of injunction could not be used to take property out of the possession of one person and turn it over to another.

There was evidence introduced by the plaintiffs that after the work of development of the M-R claims by Miller and associates had been stopped in November of 1944 by Scoggin, acting for the Scoggin locators, through undertaking to locate the several Scoggin

placer mining claims so as to include the ground embraced in the M-R placer mining claims with the result that one L. J. Brimmer, then employed by Miller and associates, ceased drilling operations on the M-R claims for the purpose of determining the location, depth, etc. of the bentonite thereon, it became impossible due to weather and road conditions to do any substantial additional work thereon until June, 1945.

It appears that on the third of that month, the plaintiffs placed upon some of the M-R claims, fuel tanks, fuel oil and grease together with camp equipment preparatory to the use of power machinery in building roads to the lands included in the M-R claims and building roads and culverts upon these claims in order to continue the development thereof and that at all times after the third day of June, 1945 the plaintiffs were in possession of said M-R placer mining claims constructing roads not only on all these claims but for the purpose of providing access roads to them.

Previously plaintiffs had contracted with the A. H. Read Company of Cheyenne, Wyoming to send power machinery, cars, trucks, and men to operate them to the M-R claims by way of Alzada, Montana, the most practicable way of reaching the location of these claims, and had leased said machinery and equipment at the rate of about $184.00 per day. On or about June 15, 1945 the defendant, Scoggin, came to the camp of the plaintiffs where Leslie A. Miller, one of the plaintiffs, was then engaged in supervising the work of constructing an access road extending in a southerly direction to said claims from the county road which ran westerly from Alzada, Montana and told the said Miller that he, Scoggin, desired the equipment which had been placed on said M-R placer mining claims removed therefrom. Again on June 20, 1945, Scoggin went to a place where the employees of plaintiffs were operating power equip-

ment on the M-R placer mining claims and ordered them to get off the lands included in these claims and by his words and conduct threatened said employees with a rifle which he had with him.

About June 21, 1945 when Miller was at a camp on the access road to the claims and about a mile and a half or two miles from them, Scoggin came in a truck to the camp and told Miller he would not allow the machinery to be taken up to the M-R placer mining claims; that Scoggin stated at that time that he didn't "have to have any legal authority to stop" the plaintiffs "from going on these claims"; that Scoggin told Miller that he could not go on with the work and presently· exhibited a rifle which he said he would use to stop plaintiffs from moving on the claims last mentioned, saying also that he had ordered the machinery operat-.ors in the last three or four days not to go on these claims until the plaintiffs had a better right to the claims than he did.

The witness for the plaintiffs, Leslie A. Miller, the record discloses, answered the question:

"Q. Now what was the exact conversation, if you remember it? You said he exhibited a rifle, what was the exact conversation between you and him at that time, with reference to a rifle, if any?

"A. Well, he asked me if I knew what kind of a rifle this was, and I said, well it looked to me like a 30.30. He replied it wasn't a 30.30, it was a 32 special, which is somewhat larger, and I asked him, I said, 'is your idea—who advised you to take this kind of a course in dealing with me?' and he replied, 'my idea, and I have a thorough understanding about what I am doing here', and I said, 'would you really use that rifle?' and he said, 'you just try to take that machinery up there to the claims and I will show you I will stop you', and thereupon, I turned to the operators of this machinery, Mr. Bruner and Mr. Childers and said to them, 'all right, start up those machines there and let's get on up

there, let's get going', and they refused. Mr. Childers said to me, 'you can't ask me to look down the barrel of that rifle', and I said, 'oh, he wouldn't use that gun', and they said, 'well, we are afraid he would and we are not going to take a chance', and they refused to start up their machines."

The work was then stopped and not continued until the plaintiffs obtained the temporary injunction already mentioned. It also appears from the record that Scoggin told the court on direct examination by his own counsel relative to this conversation:

"It seemed Mr. Miller asked me, as I have already stated, 'where you were going to stop us at', and I told him at the Rock Crossing, and then, as he has already previously stated, his two men that were operating this machinery were there and he turned to the men and asked them, 'all right', he said, 'let's get going, we will just see if you are going to use a gun. Are you men afraid of a gun?' he said, as he turned to his men, and I said, 'that won't be necessary, because I am going to stop you, you don't need to even start, you are not going on those claims until you prove to me that you have a right in there', and Mr. Miller said, 'is this a public road where people travel?' and I said, 'this is a public road and I haven't been stopping anybody from traveling on it', and at this point one of Mr. Miller's employees said, 'I don't think you believe he had got a gun', and he stepped into the truck and pulled the door open and took the gun out and showed it to Mr. Miller, and where it was sitting behind the seat where I always carry my gun. Mr. Miller asked me, 'is that a .30.30?" and I said, 'no, that is a .32 special, that is a little bigger'. That is the only time I had my hands on the gun—strike that out—that the gun was ever shown."

On cross examination the same witness answered the question:

"Q. How did you propose to stop Mr. Miller, if he tried to come on the claims?

"A. Mr. Miller asked me at one time, I remember, 'why don't you get the sheriff?', and I told him I think it would be his place to get the sheriff because he would

need protection if he came on the property without my permission."

The witness then said that this order to Miller to stay off the claims was just a "bluff" and that he did not intend to use the gun. It was, of course, the duty of the trial court to resolve this conflict in testimony and the findings of fact and the judgment entered thereon show that this was done in favor of the plaintiffs.

We do not consider the Wyoming Theatre Co. and Alaska Development Co. cases supra, in point here. They did not involve mining locations and their facts were radically different in other respects. Here the possession on the part of the plaintiffs of the Milread placer mining claims was obtained openly and peaceably and no force was used in doing so. It will be noted especially that the temporary injunction order by its terms did nothing more than restrain Scoggin from preventing the plaintiffs or their employees going upon the placer mining locations they claimed, doing development work thereon and from threatening plaintiffs or their employees with bodily harm or injuries. It did not interfere with Scoggin's going upon the land and doing any work in aid of his alleged mining locations in the event he saw fit to do so.

3 Lindley on Mines (3d ed.) p. 2188, section 872 says:

"A denial of the preventive remedy by injunction, where the injuries complained of are of a character calculated to destroy the value of the land for all useful purposes, would be tantamount to a denial of all protection. *So, too, where the defendant threatens to prevent the plaintiff from completing work necessary to perfect his location,*" (Italics supplied).

Morrison's Mining Rights (16th ed.) p. 476 states that: "The practice in mining litigation is liberal to enjoin to prevent either party from getting unfair advantage."

Safford vs. Fleming, 13 Ida. 271, 89 Pac. 827 presents facts in many respects like those appearing in the case at bar. That was an appeal from an order refusing an injunction pendente lite and dissolving a temporary restraining order issued at the time of filing the complaint, the first pleading in the case. This pleading was supported by the affidavit of one of the plaintiffs. This action on the part of the trial court was reversed on review. The following excerpt from the opinion indicates quite fully the situation presented and the reasons for the appellate court's disapproval of what had been done in the court below. The Supreme Court of Idaho said in part:

"It will be observed from the foregoing statements that this is a contest over the right to the possession and ownership of certain mining ground. The appellants allege in their complaint that they located the Bunker Chance claim on June 4, 1906. The defendants allege that they located the Lucky Stake claim on the 7th of July, 1906. The defendants deny that they have in any manner driven or kept the appellants off the ground included within the Bunker Chance mining claim. They deny that they ever threatened or assaulted the employes of the appellant while such employes were attemping to perform the location work upon said claim. That being true, to restrain the respondents from doing those acts could do them no harn whatever. *A temporary restraining order, one that restrained the respondents or their agents or employes from in any manner interfering with the plaintiffs in their work upon said mining claim,* could do them no harm, and would permit with safety both sides to protect whatever rights they had until the final determination of this case. It has been the practice of the courts in mining cases to be liberal in granting injunctive relief in mining litigation in order that one party might not be placed in a worse position during the litigation. See Lindley Law of Mines (2d Ed.) § 872. The court erred in not granting an injunction preserving the rights of the parties until this action was finally determined. The injunction to be granted in this case should not prevent either party from doing whatever was reasonably nec-

essary for the preservation of the property in controversy. See Silver Peak Mines v. Hanchett (C. C.) 93 Fed. 76. The purpose of such injunction is to protect the rights of the parties until the final determination of the case. See, also, Gilpin v. Sierra Nev. Cons. M. Co., 2 Idaho (Hasb.) 696, 23 Pac. 547, 1014; Buskirk v. King, 72 Fed. 22, 18 C. C. A. 418; Hess v. Winder, 34 Cal. 270; King v. Campbell (C. C.) 85 Fed. 814. The court erred in refusing to grant an injunction pendente lite." (Italics supplied).

In accord with the foregoing, Ricketts American Mining Law (3d Ed., 1931) p. 239 uses this language: "The courts are more liberal in granting a writ of injunction in mining cases than in those affecting other real estate because of the necessity of preventing injury which can not accurately be estimated and therefore can not be adequately compensated; or, in order that neither party may get the advantage of the other during the litigation, by force or violence."

At the time Scoggin took the drastic action he did as given somewhat in detail above, he knew that plaintiffs had applied for a patent on these M R mining claims. The notices of such application were standing on these claims. They were also being published in the newspaper and additionally they were posted in the United States Land Office at Buffalo, Wyoming, all as required by the land office regulations and pursuant to the statutes of the United States governing matters of this character. See Section 29, Title 30, U. S. C. A. and the sections of the United States Statutes at Large there cited. The nature of these proceedings in the United States Land Office and the operation of the statutory notices thus prescribed are appropriately indicated by the authorities as follows: Judge Brewer, then Circuit Judge, considering the procedure in an application for patent, in Wight vs. Dubois, 21 Fed. 693 said that:

"The proceedings before the land department are judicial, or *quasi* judicial, at least. The publication is process. It brings all adverse claimants into court, and,

failing to assert their claims, they stand, at the expiration of the notice, in default."

So the Supreme Court of Colorado in Healey vs. Rupp, 37 Colo. 25, 86 Pac. 1015, has said:

"The notices required to be given of an application for patent are, in effect, a summons to all adverse claimants.—*Wolfeley v. Lebanon Co.*, 4 Colo. 112. The latter must assert their rights by filing an adverse within the sixty days' publication of notice of application for patent.—§ 2315, Rev. Stats. U. S. Unless filed within that period, it will be conclusively presumed that none exists.—*Lily M. Co. v. Kellogg*, 74 Pac. (Utah) 518."

The Circuit Court of Appeals for the 9th Circuit in Bunker Hill and Sullivan M. & C. Co. vs. Empire State M. & D. Co., 109 Fed. 538 in more detail announced that:

"The publication of the notice of the application required by the statute was a notice to all the world to present to the land office any and every adverse claim to that of the applicant. A failure to do so constituted, in law, an admission of the truth of every fact covered by the application; and the issuance of a patent in pursuance of such application is, in the absence of any adverse claim, quite as conclusive of the patentee's rights as if a contest in respect to the application had been initiated in the land office, and adjudicated by a competent court in favor of the applicant. In either case, it is absolutely conclusive against all adverse claimants."

A writ of certiorari in the foregoing case was denied by the Supreme Court of the United States, 186 U. S. 482, 22 S. C. 941, 46 L. Ed. 1260.

The plaintiffs were, under Section 29, Title 30 U. S. C. A., (R. S. Section 2325, C. 9, Section 1, 21 Stat. 61; C. 462, 43 Stat. 1144, 45), obligated to do $500 worth of work or to make improvements worth that amount on each claim not later than the date of the last publication of the notices aforesaid, to wit, August 16, 1945. That being so, the interference by Scoggin with the

operations of the M-R locators hereinabove described, resulted in depriving the plaintiffs of their right to do this work and make the necessary improvements on their claims. As already pointed out, the temporary injunction order did not interfere at all with Scoggin and his associates doing any annual labor upon the ground in dispute if they deemed that to be necessary in order to maintain the claims undertaken to be located by them. In other words, under the circumstances disclosed, the restraint merely operated to preserve the status quo until it could be legally determined who was entitled to the ground in controversy.

The defendant, Scoggin, knew that application for patent by the plaintiffs for the Milread placer mining claims ipso facto commenced proceedings whose ultimate result necessarily would determine who had the better title to the premises involved. Consequently in due time he filed his adverse claim and brought the action, the record in which we have already reviewed in Case No. 2379 supra. Defendant's action in preventing the M-R locators placing their machinery and employees on the claims they had located more than four years before, was in effect an attempt to prevent an orderly and proper determination of the all important question of which group of locators should, under the law, be entitled to hold the disputed ground. We can not see that the discretion, always vested in a court of general jurisdiction when an injunction is sought, was, under the circumstances here shown, abused or improperly exercised.

The questions herein raised concerning the defendant's surface rights under Section 299, Title 43, U. S. C. A. (39 Stats. 864, C. 9, Section 9) have already been disposed of by what has been said in the opinion filed in Case No. 2379 supra. In addition to what was there

said in this connection, it may be observed also that Scoggin's counsel stated to the court:

"he (Scoggin) has repeatedly said he can't give a description of his deeded land or his grazing land."

Under such circumstances it is difficult to see how the trial court could do anything about the matter, even if it could legally have acted relative to the point urged. Additionally, our attention has not been directed to any proofs of damages to Scoggin's alleged surface rights. Indeed, Mr. Miller, as a witness for the plaintiffs, stated that Scoggin upon being approached by Miller and L. W. Read relative to entering into "some kind of an arrangement" with him for any damage that the M-R locators might do to his surface holdings as a result of their proposed work told Miller that:

"He wasn't interested in such damages, as they would be inconsequential in amount, and he wanted the bentonite."

It is argued that the sum in money damages which was adjudged to plaintiffs should not have been awarded to them by the district court because they should not have gone to the expense of moving the various pieces of equipment for use in developing the claims to them until it was determined who had the better title to the ground. But, in endeavoring thus to do development work under the requirements for a United States patent to these claims, the plaintiffs were, as we have seen, merely initiating part of the very procedure necessary to actually speedily determine the ownership of the contested ground. The defendant's rights were not in the least jeopardized thereby. He could and did ultimately avail himself of the right to have his title to the property adjudicated as it conflicted with the claims of the plaintiffs. His refusal to allow the development work to proceed accomplished nothing except to cause the machinery rented and the men em-

ployed by the M-R locators to remain idle for nine days and thereby plaintiffs suffered damage. They were only doing what they had a legal right to do, viz., seeking to obtain patents to the ground in question if they were, under the law entitled to have them.

There is no dispute that the plaintiffs lost the use of the men and machinery for the period just stated or that the sum adjudged was incorrect in amount. During the course of the testimony of A. H. Read relative to the loss the M-R locators had suffered on account of the defendant's interference with their right to proceed with diligence to place the necessary amount of improvements and labor on the claims prior to the expiration of the period for publication of the notice of application for patent, counsel for defendant told the court:

"I don't think there is any objection to this witness testifying to the price per hour and confine it, as the Court has suggested, to the time that was lost up there,"

We do not see how we can possibly do otherwise than direct an affirmance of the judgment of the district court of Crook County. An order to that effect should be entered.

*Affirmed.*

KIMBALL, J., and BLUME, J., concur.