**RENO LIVESTOCK CORPORATION, a Wyoming Corporation, Appellant (Defendant),**

v.

**SUN OIL COMPANY (DELAWARE), a Delaware Corporation, Appellee (Plaintiff).**

No. 5531.

Supreme Court of Wyoming.

Dec. 29, 1981.

Bruce P. Badley and Fred R. Dollison (argued), Badley, Rasmussen & Schoumaker, Sheridan, for appellant.

C. Robert Klus, Jr., Morgan & Brorby, Gillette, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

The appellant seeks reversal of the district court's summary judgment. That judgment enjoined appellant from interfering with appellee's drilling operations and awarded appellee damages of $10,912.00. The damages arose when appellant chased off a dirt contractor who had been employed by appellee to prepare a site for setting up an oil well drilling rig, and appellee was compelled to pay for the downtime of machinery brought there. Appellant claims as errors:

1. There were genuine issues of material fact requiring a trial.

2. Summary judgment was granted before appellant had an opportunity to take a noticed deposition to disclose material.

3. Summary judgment should not have been granted where there existed a counterclaim by appellant seeking an amount equal to or greater than appellee's claim of damages.

4. The district court should have required appellee to seek a protective order under Rule 26(c), W.R.C.P. with respect to the deposition appellant was seeking to take.

5. The district court's order striking appellant's jury demand.

The appellee claims there is no reasonable cause for appeal and seeks attorney's fees and penalty under Rule 10.05, W.R.A.P.

We will affirm, hold there was no reasonable cause for appeal and allow the fees and penalty provided by Rule 10.05, W.R.A.P.

I

The record consists of various materials offered in support of the motion for summary judgment. The information for the narrative which follows is from those materials. The appellant is the surface owner of the real property over which this dispute arose. It was originally patented to a predecessor in title under the Stock-Raising Homestead Act. 43 U.S.C. § 291 et seq. Under the provisions of that act, " * * * any patent therefor shall contain a reservation to the United States of all minerals in said lands and the right to prospect for, mine, and remove the same." 43 U.S.C. § 291. The warranty deed to appellant was "SUBJECT to all prior reservations * * *."

The appellee is an owner and operator of an oil and gas lease issued by the United States on the particular land involved.[1] Appellant was notified that appellee proposed to drill an oil and gas well at a particular site on the land. The appellant refused entry until appellee agreed to pay initial damages of $5,000.00 and annual damages of $1,000.00 for the well site; ini-

---

1. So much of the SE ¼ SE ¼, Sec. 34, T. 58 N, R. 72 W, 6th P.M., Campbell County, Wyoming as may be required for all purposes reasonably incident to drilling for oil and gas and removing the same from the premises.

tial damages of $1,500.00 and annual damages of $500.00 for the tank battery; and, $5.00 per rod for the first five years and $.50 per rod escalator every three years for road damages. Appellee refused to enter into any such agreement, claiming it was not required to do so under its lease, issued pursuant to 43 U.S.C. § 299:

" * * * Any person who has acquired from the United States the coal or other mineral deposits in any such land, or the right to mine and remove the same, may reenter and occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining or removal of the coal or other minerals, first, upon securing the written consent or waiver of the homestead entryman or patentee; second, upon payment of the damages to crops or other tangible improvements to the owner thereof, where agreement may be had as to the amount thereof; or, third, in lieu of either of the foregoing provisions, upon the execution of a good and sufficient bond or undertaking to the United States for the use and benefit of the entryman or owner of the land, to secure the payment of such damages to the crops or tangible improvements of the entryman or owner, as may be determined and, fixed in an action brought upon the bond or undertaking in a court of competent jurisdiction against the principal and sureties thereon * * *."

Appellee claimed there were no damages to "crops or other tangible improvements."

A "nation-wide" oil and gas bond in the sum of $150,000.00 was in force and has been posted with the Bureau of Land Management, Department of the Interior, United States, "for the use and benefit of (1) the United States; (2) the owner of any of the land subject to the coverage of this bond, who has a statutory right to compensation in connection with a reservation of the oil and gas deposits to the United States * * *." This form was found to satisfy 43 U.S.C. § 299, supra, in *Coquina Oil Corp.*, 41 IBLA 248 (1979).

The appellee was informed that a drilling rig would be available on December 10, 1980. During the final week of November, 1980, a dirt contractor, Mike's Water and Dozer, Inc., engaged by appellee, entered the property to begin preparing ground for the rig. There was a long-established roadway going to other well sites in the area. The appellant ranching corporation, through its president, William E. Reno, showed up on the scene and commanded the appellee and its dirt contractor not to leave the established roadway for the purpose of preparing the proposed well site and threatened to shoot out the tires of the contractor's heavy earth-moving equipment if the appellee and its contractor moved off the road.

Appellee and the contractor discreetly, with permission of Mr. Reno, removed the equipment from the road to a nearby field where it sat idle for several days. The dirt contractor thereafter billed appellee $10,912.00 for equipment downtime. The action for injunction and damages followed shortly thereafter. By way of augmentation, other pertinent facts will be set out as the opinion flows through the issues.

## II

As a prelude, the setting out of some principles enveloping summary judgments, provided by Rule 56, W.R.C.P., is appropriate. When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.

We separate the formal and pretended from the genuine and substantial so only the latter may be considered in eliminating the burden of a formal trial if only questions of law are left to decide; there must be no issue of material fact to decide. *Weaver v. Blue Cross-Blue Shield*, Wyo., 609 P.2d 984, 986–987 (1980). A material fact, expressed in various ways, is one having legal significance which would in a given case control the legal relations of the parties; one upon which the outcome of the litigation depends in whole or in part; one on which the controversy may be determined; one which will affect the result or outcome of the case depending upon its resolution; or one which constitutes a part of the plaintiff's cause of action or the defendant's defense. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). Summary judgment affords an opportunity for prompt disposition of a lawsuit in its early stages, permitting an end to unfounded claims and avoiding the expense of a full-fledged trial to both litigants and the state's judicial machinery. *Bluejacket v. Carney*, Wyo., 550 P.2d 494 (1976).

The various aspects of the case before us make it an excellent candidate for summary judgment. The district judge aptly recognized it as such.

### III

 We will first dispose of any question of the law applicable to rights of the surface owner and those of mineral lessee under the Stock-Raising Homestead Act, supra. The right to entry by the lessee is beyond doubt, once it has given notice of entry and posted the requisite bond to protect the surface owner, for payment of damages for crops, tangible improvements, use of more of the surface than needed and negligence. There is no question that the district court had jurisdiction and appellee

performed those conditions precedent; and, upon doing so, appellee was entitled to immediate entry. *Holbrook v. Continental Oil Co.*, 73 Wyo. 321, 278 P.2d 798 (1955); *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 48 S.Ct. 580, 72 L.Ed. 961 (1928); *Bourdieu v. Seaboard Oil Corp. of Delaware*, 38 Cal. App.2d 11, 100 P.2d 528 (1940). Appellant knew these requirements and did not seriously resist the granting of the injunction [2], nor does it on appeal raise any question in that regard. We need not further explore the law; it is settled.

### IV

The appellant asserts a position that genuine issues of material fact do exist and that summary judgment was and is improper with respect to (1) the actual threat against appellee's agents; (2) actual physical opposition to preparation of the well site; and, (3) the actual downtime expense of Mike's Water and Dozer, Inc.

With respect to the threat, the circumstances are disclosed by the affidavit of Carl M. Bradberry, production supervisor of appellee, and the deposition of appellant, presented in support of the summary judgment. Bradberry's affidavit disclosed that on December 1, 1980 he and employees of Mike's Water and Dozer, Inc., all with three pieces of heavy earth-moving equipment, proceeded to the land in question for the purpose of constructing a drill site. The affidavit recites:

"4. That Mr. William E. Reno meet [sic] us at the time and place above described and informed us that we were not to leave the road to construct the drill site until such time as we paid the damages which he was requesting and further Mr. Reno stated: 'I don't want you to move that equipment.' Carl Bradberry stated:

---

2. Appellant, in passing, claims that there is no longer any need for the injunction because appellee is now on the land pumping oil and the matter is moot. An action for injunction does not become moot merely because there is compliance with the injunction. The equitable jurisdiction of the district court will not be reversed absent a strong showing of abuse. *Allee v. Medrano*, 416 U.S. 802, 810, 94 S.Ct.

2191, 2198, 40 L.Ed.2d 566 (1974). A defendant carries a heavy burden of persuasion. *Campbell v. McGruder*, 580 F.2d 521 (D.C.Cir. 1978) and cases there cited. We are not persuaded. Appellant's past adamant conduct justifies the position taken by the district judge and we see no abuse of discretion in granting a permanent injunction.

'We have to build the location anyway.' Bill Reno: 'If you do, you will walk to town.' Carl Bradberry: 'Why?' Bill Reno: 'I will shoot all of your tires out.' "5. That the equipment was then parked beside the road, and your affiant and the employees of Mike's Water and Dozer, Inc. left the site and did not proceed to construct the location."

The deposition of appellant, in pertinent part, in the form of questions and answers:

"Q. And, what happened on the first of December?

"A. On the first of December I went up there, and there wasn't nobody there when I arrived. So, I was looking around and seeing everything, seeing what kind of damage had been done to the area. And, pretty soon Mike's men showed up. The same, well one of the same guys that had been operating the equipment from before and another guy.

"Q. Did you know their names, or the new guy's name?

"A. No.

"Q. All right, anybody else show up?

"A. Later.

"Q. What happened?

"A. Half an hour later Carl Bradbury [Bradberry] showed up.

"Q. What happened during that half hour?

"A. Well, during that half hour the two guys and I sat in the pickup and talked and drank a little coffee and discussed little odds and ends, nothing important.

"Q. Okay. Did these discussion[s] actually take place on that 40 acre tract?

"A. Yep.

"Q. What then happened when Carl Bradbury [sic] showed up?

"A. When Carl Bradbury [sic] showed up we sat around and talked a little while. We discussed the cold weather and how hard it is going to be to start the equipment.

"Q. Was there anybody else with Carl?

"A. No sir, he was by himself.

"Q. All right.

"A. When we got through talking about the snow and the cold and the equipment he said, well, Bill you know I've got to get this equipment going and start this location. And, I said, yeah, I know you got to Carl. I've got to watch out for myself to, I said. I said, I can't tell you not to start the equipment, and I can't let you finish.

"He said, well you're going to have to make a threat against me Bill, or something, he said, so that I can't do this. I said, well if you turn a wheel on this ground I'll see that you walk back to town. I'll shoot your tires out and you'll walk back to town. And, he said, well, that's good enough for me. He said, you mind, he didn't say that. He said, that's good enough for me. I've got to go back down and call my superior.

"So, he stepped out of the pickup. Carl was walking back to the pickup. I did to, I got back there and was talking to him. He said, now well that's over, I wonder what we've got to do. I said, I don't know, I suppose we turn it over to the attorneys and let them handle it. I said in the mean time why don't you come on down to the house and have a cup of coffee with me. He said, I've got to call my boss first, then I'll be down.

"So, I went back to the pickup where the other guys were sitting. They asked me if they could start their equipment and move it out of there. I said, yeah, you sure can do that. I said, you guys can load up your Cats and your blade and take it on down the road and go to work with it somewhere else. I said, I am not going to stop you from leaving.

"I left and Carl had left before me. The other two guys fired up the rest of the equipment and moved it on out of there that day. I went back and fed my calves. Carl showed up and we sat and had coffee for an hour and then he went on about his normal duties, and I went about mine.

"Q. Was all the equipment removed that day?

"A. Yes sir.

"Q. Was any equipment ever moved back on?

"A. Not until you got the injunction the other day for Sun."

Appellant filed no opposing affidavits or other material suggested by Rule 56, W.R.C.P., but only argued that the quoted portions of the deposition of appellant established only an agreement to remove the machinery and the discussion did not constitute a threat. It is his position that what transpired is subject to different interpretations, relying on *Fegler v. Brodie*, Wyo., 574 P.2d 751, 753–754 (1978) where this court said:

"If that evidence is subject to conflicting interpretations, or reasonable minds might differ as to its significance, summary judgment is improper. 10 Wright and Miller, Fed. Prac. and Proc.: Civil, § 2725, pp. 498, 515. The cases in that reference cited supporting that proposition are in such volume that it is impracticable to catalog them here but we can by way of illustration set out the manner of expression used by some of the courts which clarify those grounds for denial of summary judgment. 'Summary judgment should not be granted where contradictory inferences may be drawn from undisputed evidentiary facts.' *United States v. Perry*, 9 Cir. 1970, 431 F.2d 1020, 19 ALR Fed. 537. 'Even where the facts bearing upon the issue of negligence are undisputed, * * *, if reasonable minds could reach different conclusions and inferences from such facts, the issue must be submitted to the trier of fact.' *Marsden v. Patane*, 5 Cir. 1967, 380 F.2d 489. ' "Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment." ' *Minnis v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W.*, 8 Cir. 1975, 531 F.2d 850. * * * "

■ The view of the district judge was that the language used by appellant was an exaggeration for effect, not meant to be taken literally. However, we agree with his analysis of the overall picture of the confrontation set out in his letter opinion:

"The record is abundantly clear that Sun intended to come on the land and drill an oil well and that Reno was not going to let it. Each side knew the other's position and, fortunately, both sides had the good sense to recognize that they did not have to resort to violence to make their point. The material and operative fact is that Sun was denied access. The only question is whether that denial was wrongful. That is a question of law which I will now address."

We can see no genuine issue on this material fact. It would be foolhardy to require that before the granting of an injunction that there be actual physical violence in order to constitute the threat of interference with another's right enforceable by way of the extraordinary remedy of injunction. One does not have to await the consummation of threatened injury to obtain preventative relief. Injunctive relief is designed not to deal with past violations, but to avoid future wrongs. If injury is certainly impending, that is enough. Prevention of impending future injury is a recognized function of a court of equity. *Carter v. Carter Coal Company*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *Swift & Co. v. United States*, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928). The appellant has demonstrated a proclivity to keep appellee off the property until it knuckled under to his demands. The threatened use of firearms, whether an exaggeration or not, is not a risk which an individual should have to face up to in order to demonstrate his valor. It is reasonable to seek the equitable power of a court to avoid that future contingency.

In *Miller v. Scoggin*, 64 Wyo. 248, 189 P.2d 693 (1948), Scoggin claimed his threatened use of a rifle to prevent the movement of running machinery onto a claim was only a bluff. This court took a dim view of such an assertion and spoke approvingly of the principle that force and violence should not be permitted in order to prevent an orderly

and proper determination of the claims of the parties. The need for relief on that score has been satisfied on undisputed material facts.

The other part of appellant's claim, that there were genuine issues of material fact to be resolved, deals with the award of damages for downtime of the equipment, supported by affidavit of an officer of Mike's Water and Dozer, Inc. Appellant asserts that the machinery could have been used elsewhere rather than left parked in a nearby field and that this was a matter that could have been clarified through an intended deposition of the manager and employees of Mike's Water and Dozer, Inc. to determine whether appellee actually incurred a debt of $10,912.00.

 The notice to take deposition was not served until the date set for hearing on the motion for summary judgment, April 2, 1981. The deposition was scheduled for April 14, 1981. Appellant relies on Rule 56(f), W.R.C.P.:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

We find no affidavit of any of appellant's officers setting forth reasons that it could not present opposing affidavits. The district judge in his opinion said in that regard:

"a. There is no genuine issue of material fact with respect to plaintiff's claim for compensatory damages. Defendant claims that it would be premature to enter a summary judgment at this time because it has noticed its intention to take the deposition of personnel from Mike's Dozer Service and information may be obtained in that deposition which would raise material issues of fact. Defendant had adequate notice of the date set for hearing on the plaintiff's motion for summary judgment and it had notice

of the affidavits and other materials upon which the plaintiff relied for its motion. Defendant filed no opposing affidavits, nor did it timely request leave of court for additional time within which to document claimed factual issues as provided in Rule 56(f), W.R.C.P. Argument about facts that might be developed as a result of a deposition yet to be taken cannot be considered. *Harris v. Grizzle, et al.*, Wyoming Supreme Court, case number 5328, decided March 20, 1981, slip op. at 3 [625 P.2d 747, 750]."

We see no reason to disagree and hold that there was no genuine issue of fact as to appellee's damages caused by appellant's unlawful conduct.

## V

We have some difficulty understanding appellant's argument that summary judgment should not have been granted where there existed a counterclaim by appellant seeking an amount equal to or greater than appellee's claim of damages. It is true that on the day before the hearing on the motion for summary judgment an amended answer and counterclaim was filed by appellant which claimed from appellee $20,000.00 in damages for various reasons that are now unimportant because of ensuing events. On April 3, 1981, appellant and appellee, for some reason that does not appear, stipulated to dismissal of the counterclaim without prejudice. On April 17, 1981, the district judge, on the basis of the stipulation, signed an order dismissing the counterclaim without prejudice. The summary judgment was not entered until May 14, 1981.

 When the counterclaim was dismissed, no cause therein alleged any longer existed as far as current litigation then pending was concerned. When no controversy exists, courts will not consume their time deciding moot questions nor decide cases to arise in the future. *Northern Utilities, Inc. v. Public Service Commission*, Wyo., 617 P.2d 1079, 1085 (1980) and cases there cited. The trial court, before rendering its opinion and entering summary judgment, became aware of this act of abandon-

ment occurring after argument creating mootness as to any issue relating to the counterclaim.

## VI

■ With respect to the issue raised by appellant which urges that appellee was under a burden to seek a protective order under Rule 26(c), W.R.C.P., no cogent argument or authority was presented, nor was that question even presented to the district court. We will not consider the matter. *Scherling v. Kilgore*, Wyo., 599 P.2d 1352 (1979); *Minnehoma Financial Co. v. Pauli*, Wyo., 565 P.2d 835 (1977).

## VII

■ Appellant protests the trial court striking its demand for jury trial on appellee's complaint. Appellant's position need not be considered. The entire case has been disposed of by the grant of summary judgment on the issue of injunction and damages. The only claim made in appellee's complaint in which appellee did not prevail in the district court was its prayer for punitive damages. That was denied by the summary judgment, and appellee has not cross appealed. Since the counterclaim has vanished from consideration and all of appellee's claims are satisfied, there is nothing to be tried either by the court alone or a jury, even if proper, which we need not decide. The case is closed. We will not decide questions not requisite to adjudication and being only of academic interest. *Wallace v. Casper Adjustment Service*, Wyo., 500 P.2d 72 (1972).

## VIII

One question remains, and that is the one raised by appellee. Should this court certify that there was reasonable cause for the appeal under the provisions of Rule 10.05, W.R.A.P.:

"When, in a civil case, the judgment or final order is affirmed, appellee shall recover the cost for typewriting and reproducing his brief, such cost to be computed at the rate allowed by law for making the transcript of the evidence. Unless the court certifies that there was reasonable cause for the appeal, there shall also be taxed as part of the costs in the case, a reasonable fee, to be fixed by the court, not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00), to the counsel of the appellee, and to the appellee damages in such sum as may be reasonable, not exceeding one thousand dollars ($1,000.00), unless the judgment or final order directs the payment of money, and execution thereof was stayed, when in lieu of such *penalty*, it shall bear additional interest at a rate not exceeding five percent (5%) per annum, for the time for which it was stayed, to be ascertained and awarded by the court." (Emphasis added.)

We rarely refuse to certify that there was reasonable cause for the appeal; but, in an appropriate case, we have not hesitated to do so, as we did recently in *Perry v. Vaught*, Wyo., 624 P.2d 776 (1981).

■ The disposition made by the district judge was faultless on the basis of prevailing law; there was no room for dispute. We have strained to find any law favorable to appellant but could find none. The elastic quality of our credulity has been stretched beyond its limit. We hold there is no reasonable cause for appeal.

Under our rule the penalty may be imposed, in addition to the attorney's fees, without proof of pecuniary loss or other damage. The clerk of this court is directed to tax as part of the costs in the case a fee of $500.00 to appellee's counsel and $1,000.00 against appellant as a penalty.

Affirmed.

ROONEY, Justice, concurring in part and dissenting in part, with whom ROSE, Chief Justice, joins.

I concur with the majority opinion in all but its determination that damages or penalty should be awarded appellee. Even reasonable minds differ on relative matters. I do not want to discourage appeals. They should be available when an attorney believes he has *potential* error, or when he has

evaluated his chance for success to be of a low percentage but his client directs him to proceed nonetheless.